[No. 10803.   Department Two.   April 18, 1913.]

LOUIE THORESEN, *Respondent*, v. ST. PAUL & TACOMA LUMBER COMPANY, *Appellant.*[1]

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. The contributory negligence of a stevedore, loading lumber on a dock, and injured when a car ran off the track, is for the jury, where he was trying to prevent an accident by blocking the car, believing that persons or property would otherwise be injured, although, as the sequel proved, no harm would have resulted if he had allowed the car to run to the end of the rails.

SAME—CONTRIBUTORY NEGLIGENCE—MOTIVE — EVIDENCE—ADMISSIBILITY. Upon an issue as to contributory negligence, the plaintiff may give direct evidence as to his motive or purpose in acting under a sudden emergency.

SAME—SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY. The credibility of plaintiff's evidence as to his motive or purposes in certain acts is for the jury.

SAME—TRIAL—QUESTION FOR COURT. In an action for personal injuries it is proper to withdraw from the jury the defense that plain-

[1]Reported in 131 Pac. 645; 132 Pac. 860.

tiff's injury was due to the acts of fellow servants, where the omission of duty causing the accident was that of the defendant and plaintiff's fellow servants owed him no duty with respect thereto.

SAME—TRIAL—INSTRUCTIONS. It is proper to refuse an instruction to the effect that there could be no recovery by plaintiff for personal injuries if he was apprised of the danger in time to have avoided it, where his right to recover was not tested by such fact, but depended upon whether he acted as a reasonably prudent person in endeavoring to save property after he was apprised of the danger.

SAME—PROXIMATE CAUSE—CONCURRING NEGLIGENCE. Contributory negligence by third persons is not a defense to an action for negligently causing an injury to the plaintiff.

TORTS—JOINT TORT FEASORS—SEPARATE LIABILITY. It is optional to pursue a remedy against one of several joint tort feasors; hence a judgment against one separately, instead of against all jointly, is not error of which the judgment debtor can complain.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A judgment for $15,000 for personal injuries, sustained by a stevedore, who was so seriously injured that he cannot follow his vocation, is excessive, where the jury failed to take into consideration the fact that he was not cut off from all employment, and should be reduced to $10,215.

APPEAL—DECISION—REMAND—REMISSION OF DAMAGES—INTEREST. Where a judgment for personal injuries was reversed as excessive unless plaintiff consented to remit a specified sum, in which case a new judgment was directed against appellant and the surety upon the supersedeas bond for a specified sum, such new judgment is to draw interest from the date of the remittitur, and not from the date of the judgment appealed from.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 1, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for $15,000, for personal injuries. Reversed, unless $4,785 is remitted.

*Clayton Chapman* and *L. M. Bailey* (*F. S. Blattner* and *Herbert S. Griggs*, of counsel), for appellant.

*Bates, Peer & Peterson*, for respondent.

FULLERTON, J.—In this action the respondent, Louie Thoresen, recovered against the appellant, St. Paul & Tacoma Lumber Company, damages in the sum of $15,000 for

personal injuries received while at work as a stevedore, upon the appellant's docks, assisting in loading lumber upon an ocean-going vessel.

The evidence tended to show that the appellant sold a cargo of lumber to the Charles Wilson Company, agreeing to deliver the same on its own dock within reach of ship's tackle. The stevedoring firm of Rothschild & Company contracted to load the lumber onto the vessel, and employed the respondent, with some forty-five others, to assist in the work. The respondent began work on the morning of the day he was injured. At that time he found quite a quantity of lumber piled upon the dock, and he, together with on Tellefson, was directed to pile the lumber into sling loads preparatory to hoisting it onto the vessel. Later on in the day, the appellant began to bring lumber onto the dock from its mill yards, and the respondent and his co-laborer were directed to unload the cars which brought the lumber to the dock. These cars had flat tops, which were about four feet wide and eight feet long, set upon two sets of trucks of two wheels each, placed about four feet apart. They ran on a track something similar to that of an ordinary railroad. The track ended on the dock within a few feet of the side where the vessel which was being loaded was anchored. Some one hundred and twenty feet back towards the lumber yards of the appellant, there was a rise or elevation in the track above its common level of some fifteen inches, giving the track a gradual slope downwards towards the dock for about sixty feet, from which point to the end of the track it was again comparatively level. Loaded cars were brought to the top of the rise from the appellant's lumber yards by horses, where they were blocked and left until such time as the stevedores got ready to unload them. When it was desired to unload the cars, the stevedores pushed them by hand to such place on the dock as they deemed it most convenient for that purpose. The lumber being carried by the cars at the time of the accident to the respondent consisted of timbers, ten inches

by ten inches in size, ranging in length from eight to twenty feet. The timbers were loaded on the cars in tiers, having a width of five pieces and a height of six pieces. The load was usually secured on the car by small pieces of boards called binders, laid across the load between the tiers, and sometimes by stays or overriders, placed across the top of the load. One of the end rails of the track on which the respondent was working was about twenty inches shorter than the corresponding rail on the other side, and no buffer or block of any kind was placed to prevent the cars from running off the end of the track.

Just prior to the happening of the accident, the respondent and his co-laborer unloaded a car and piled the lumber to the side of the track, and some three or four feet therefrom. As they finished their work and lifted the unloaded car from the track preparatory to bringing in another loaded car, the respondent observed a loaded car coming down the incline from the rise in the track at a considerable speed. Fearing, as he testified, that the car might run off the end of the track and destroy property, or kill or injure some one, he gathered a plank and endeavored to stop the car by placing the board in front of the rear wheel. This he did twice, the car running over the board each time without stopping. He then prepared to place the block for the third time, when the front wheel of the car ran off the end of the short rail and turned over sufficiently to cause a part of the load to fall off. The falling lumber caught the respondent between the car and a lumber pile which had been placed along the side of the track, crushing and breaking both of his legs and otherwise bruising his body; being the injuries for which he sues.

The car causing the injury was brought to the top of the grade by one of the appellant's teamsters; and, according to the respondent's testimony, was let loose by the teamster and allowed to run down the incline without warning and contrary to the usual custom, and was not observed by the respondent until it was almost upon him. The respondent's

testimony tended to show, also, that the load was without the usual binders, and consequently more liable to fall off than it would have been had it been loaded in the usual way. On these facts, and the further facts that one of the end rails was shorter than the other and there was no buffer to prevent the car from leaving the rails entirely, the respondent bases his claim of negligence on which he predicates his right to a recovery.

Answering the complaint, the appellant denied all of its material allegations, and set up affirmatively, in separate defenses, contributory negligence, assumption of risk, and that the respondent's injuries, if any he received, were caused by the carelessness and negligence of his fellow servants. On the trial, at the conclusion of the evidence, the appellant moved for a directed verdict on the ground that the evidence showed conclusively that the respondent had directly and proximately contributed to his own injury. The appellant, also, after the entry of judgment, moved to set the same aside on the ground of irregularity, and on certain statutory grounds, all of which motions the trial court overruled.

The appellant first assigns that the court erred in overruling its motion for a directed verdict in its favor on the ground of contributory negligence on the part of the respondent. The claim of contributory negligence is based on the conduct of the respondent while he was endeavoring to stop the car from which the lumber fell that injured him. Attention is called to the fact that the lumber pile between which and the car the respondent found himself when the lumber on the car started to fall, and which it is claimed cut off his chance of retreat, was placed there by the respondent himself; also, to the further fact that no harm could have come, as the sequel proved, had the car been allowed to run to the end of the rails. But notwithstanding the respondent's acts may not have been essential either to preserve the property from loss or protect other individuals from harm, we think, nevertheless, that the question whether his act consti-

tuted contributory negligence was a question for the jury. He was entitled to act upon appearances, and if his conduct was that of a reasonably prudent person under the circumstances, he is not to be charged with contributory negligence even though he may have been deceived thereby. Negligence is a question of law for the court only when there can be but one conclusion drawn from the facts proven. If different minds might honestly reach different results from the facts, the question is one for the jury. We have set out the facts in our statement of the case, and we think men may, from a consideration thereof, honestly differ whether the respondent's conduct was reckless or ordinarily prudent.

The respondent was permitted to testify, as we have said, to his motive and purpose in attempting to stop the car, saying that he thought damage to property might be done by it or some person killed or injured if it was permitted to reach the end of the rails with its speed unchecked. It is thought that this evidence is inadmissible, but the rule is that, whenever the motive, belief, or intention of a person is a material fact to be proven, the direct testimony of such person as to what his motive, belief or intention was, is competent. Here the particular evidence was material on the question of the respondent's contributory negligence. It is further argued in this connection, however, that the evidence was not worthy of credence, and if excluded there is nothing in the record to justify the respondent's voluntary exposure of himself to danger in his attempt to check the flight of the car. It is claimed that the evidence is not worthy of credence because given in testimony when the witness was called to the stand after the court had taken an adjournment, and after he had gone over his entire case in response to questions by his counsel before the adjournment, and further, because it was not shown that there were any persons to be injured by letting the car go unchecked, and because the sequel proved that there was no danger of it running off the dock after it left the track. But the credibility of the evidence,

and the inference properly to be drawn from the manner in which it was given, were for the jury; the inferences are not so conclusive as to make the question one of law.

The court gave the jury the following instruction:

"The answer also contains an affirmative defense that the negligence which caused the plaintiff's injury was due to the acts of fellow servants, but as to that, the court instructs you that there is no evidence to sustain such defense, and therefore you will disregard the question of the defense of fellow servant in considering your verdict."

The appellant contends that the instruction was erroneous because it precluded the jury from considering whether or not respondent's working companions signaled the respondent's teamster to send the car causing the injury down to the dock, as the teamster testified; and also precluded the jury from considering whether Rothschild & Company's foreman, or other employees, were negligent in failing to warn the respondent of the danger, if danger there was, from the short rail, the want of bumpers, or the grade of the track; or whether any of the other fellow servants of the respondent were negligent in failing to get the pile of lumber out of the way between which and the car the respondent was caught at the time of his injury; or whether the respondent's co-workman was negligent in not getting to the car in time to stop it. But negligence arises from an omission of duty, and the respondent's co-employees owed him no duty to inform him of the short car rail, the want of bumpers, or the grade in the track. The duty to give this information was the appellant's or the immediate employer of the respondent, not his co-laborers and those in fellow service with him. Whether the respondent's co-laborer did or did not use sufficient diligence to stop the car, there is nothing in the record to show. It was shown that he made an effort in that direction; but if it did appear that his efforts were not sufficiently exacting, it would be too much to say that the jury might determine therefrom that the respondent's injuries were chargeable to his negli-

gence in that behalf. Moreover, the court did not take from the jury the question whether the appellant's teamster sent the car down the grade in response to a signal from the respondent's co-workers. On the contrary, he stated to the jury explicitly that, if they found "that the employee of the St. Paul & Tacoma Lumber Company let go of the car from which the lumber fell and injured the plaintiff, in the usual manner of letting the cars go down the grade, and in response to a signal from plaintiff or some employee of Rothschild & Company that they were ready to receive the same, then such a letting go would constitute a delivery to Rothschild & Company, and Rothschild & Company would be responsible for its management thereafter." This sufficiently covered the question, even assuming that it was technically erroneous to say that there was no evidence supporting the allegation that the respondent's injuries were due to the negligence of a fellow servant.

The appellant requested the following instructions:

"You are instructed that an act is not to be deemed the proximate cause of an injury unless the injury was such a consequence of the act as under the circumstances of the case might and ought to have been foreseen or anticipated by an ordinarily reasonably prudent man as reasonably likely to flow from such an act. In other words, where the proximate cause is the efficient cause from which the injury follows in unbroken sequence without intervening cause to break the continuity or connection, and if in this case you should find from the evidence that the defendant St. Paul & Tacoma Lumber Company started and allowed a car of lumber to start down an inclined track towards the place where plaintiff was working without giving him warning, and not in obedience to a signal from the plaintiff and his fellow workmen, and not in obedience to any custom so to do, and that such act was negligent, still, if you further find from the evidence that the plaintiff, with or without his co-employees, was apprised of the approach of the car in time to avoid injury therefrom, and could have avoided the same, then you are instructed that the said negligence of the defendant was not the proximate cause of the injury to plaintiff, and said de-

fendant St. Paul & Tacoma Lumber Company would not be liable therefor."

"Should you find from the evidence that Rothschild & Company, or any of the employees of Rothschild & Company who were working with plaintiff, or plaintiff himself, by their own acts in handling said car after the same had been delivered to them, contributed to the conditions which were the proximate cause of the injury to plaintiff, then such acts would bar plaintiff from recovery against said St. Paul & Tacoma Lumber Company."

These instructions were properly refused. The first because of the clause therein to the effect that there could be no recovery against the appellant if the respondent "was apprised of the approach of the car in time to avoid injury therefrom, and could have avoided the same," as this was practically equivalent to an instruction to find for the appellant, since it cannot be seriously questioned in the light of the record that the respondent saw the car in time to avoid injury therefrom and could have avoided the same. His right to recover, however, is not to be tested by this fact. If, after observing the car, his conduct in endeavoring to stop it was that of a reasonably prudent person, he is not guilty of contributory negligence or barred of his right to recover; while on the other hand, if his conduct in that behalf was not that of a reasonably prudent person, he is guilty of such negligence and is barred of his right to recover. The instruction therefore, because of the objectionable feature noted, was properly refused.

The second requested instruction quoted was also properly refused as an incorrect statement of the law. The rules of law governing the relations between master and servant have no application to persons who do not bear to each other that relation; hence, if the appellant's negligence contributed to the injury of the respondent, it is liable for such injury, no matter whether the negligence of others contributed thereto or not, or what were the relations between such others and the respondent. *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64;

*Williams v. Ballard Lumber Co.,* 41 Wash. 338, 83 Pac. 323.

It is claimed that the judgment is irregular and should have been set aside on the appellant's motion because entered against the appellant separately and not jointly against it and its codefendants who made default. But the appellant and its codefendants, if all were equally liable to the respondent, were joint tort feasors, and the rule is that a recovery may be had against all of them jointly, each severally, or against any number less than the whole. In this instance it was optional with the respondent whether he pursued his case to judgment against all of the defendants, and his failure so to do is not error of which the codefendant can complain. *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649.

The appellant finally contends that the verdict is excessive, and with this we are inclined to agree. The respondent was unquestionably injured seriously and permanently, and the avocations in life which he has formerly pursued for a livelihood are no longer open to him. But, nevertheless, he is not cut off absolutely from all employment, and in fixing the amount of the recovery cognizance should be taken of such fact, and we think the jury did not sufficiently consider it. We shall not, however, order a new trial in the first instance. But if the respondent will, within thirty days after the remittitur from this court reaches the lower court, file in that court a written consent to accept judgment for ten thousand two hundred and fifteen dollars, then judgment shall be entered in his favor for that sum against the appellant and its surety on the supersedeas bond; otherwise the lower court will grant a new trial. .

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.

## ON RECALL OF REMITTITUR.

### [Decided June 14, 1913.]

PER CURIAM.—This is an action to recover damages for personal injuries, and a judgment of the trial court in plain-

tiff's favor was heretofore reviewed by this court. In our former opinion, we said:

"The appellant finally contends that the verdict is excessive, and with this we are inclined to agree. The respondent was unquestionably injured seriously and permanently, and the avocations in life which he has formerly pursued for a livelihood are no longer open to him. But, nevertheless, he is not cut off absolutely from all employment, and in fixing the amount of the recovery cognizance should be taken of such fact, and we think the jury did not sufficiently consider it. We shall not, however, order a new trial in the first instance. But if the respondent will, within thirty days after the remittitur from this court reaches the lower court, file in that court a written consent to accept judgment for ten thousand two hundred and fifteen dollars, then judgment shall be entered in his favor for that sum against the appellant and its surety on the supersedeas bond; otherwise the lower court will grant a new trial."

After remittitur the plaintiff, respondent here, consented to accept the judgment thus authorized, but when application was made to the trial court for its entry, a controversy arose as to whether the new judgment should bear interest from its date or from the date of the original trial. In pursuance of a stipulation, the remittitur has been recalled, and the respondent has moved this court to modify its former judgment by providing for interest on ten thousand two hundred and fifteen dollars at six per cent per annum from March 13, 1912, the date of the rendition of the verdict. This motion is resisted by appellant.

An examination of our former opinion will show that this court, on condition that respondent would consent thereto, authorized and directed the entry of a new judgment in the trial court against appellant and the surety upon the supersedeas bond for ten thousand two hundred and fifteen dollars, and that no order was made for interest thereon. Interest should not be allowed prior to remittitur, no direction therefor having been made. The application for a modification is denied, and the trial court will enter judgment in favor of respond-

ent for ten thousand two hundred and fifteen dollars, with interest at six per cent from May 21, 1913, the date of the former remittitur.