PHILIP POND, ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, Js:

In approaching a highway crossing and station platform, it is the duty of a motorman, in the exercise of due care, to keep a reasonable lookout for passengers and to have his car under control so that he may stop on signal.

It is negligence for one signaling a trolley-car to stand so close to the track that he may be struck by the overhanging running-board.

In the present case the defendant claimed that the last-clear-chance rule had no application to the situation as disclosed by the evidence, and moved that the verdict for the plaintiff be set aside. *Held* that the trial court committed no error in denying this motion.

The plaintiff claimed that the evidence would justify a verdict on the ground of the motorman's wanton conduct. *Held* that in submitting this issue to the jury, the trial court erred.

Argued October 26th—decided November 10th, 1920.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Webb, J.;* verdict and judgment for the plaintiff for $5,000 damages, and appeal by the defendant. *Error and new trial ordered.*

*George D. Watrous* and *Harrison T. Sheldon,* for the appellant (defendant).

*Walter J. Walsh,* with whom was *Philip Pond,* for the appellee (plaintiff).

PER CURIAM.  We think it clear that there was sufficient evidence to go to the jury upon the defendant's negligence, and that the evidence fairly justifies the conclusion that the plaintiff's decedent was herself negligent in standing so near to the track of the defendant's railway that some part of a car running thereon would be liable to strike her, and the further conclusion, that her own negligence materially contributed to her injuries.

The case, as we view it, turns upon the application of the so-called last-clear-chance doctrine.

The jury might reasonably have found these facts and drawn these inferences: The track ran from the crest of a hill on a down grade about seven hundred feet, parallel with the Derby Turnpike, and over defendant's private way and crossed the Race Brook Road, a country highway very considerably traveled, and thence passed defendant's platform which was built about level with and ran nearly to the rails of the track. Opposite, and near the platform, was defendant's station for its passengers, and the platform was used by its passengers when they awaited transportation or left its cars at this point; and such use was intended by the defendant.  The track between the crest of the hill and the platform was practically a straightaway track.

An open passenger car of defendant having a double step, at about 7:30 p. m., standard time, on September 3d, 1918, struck the plaintiff's decedent with the overhang of its running-board as she stood upon this

platform.  The car was traveling at the rate of from thirty to thirty-five miles an hour.  It did not slacken its speed until it struck the decedent.  The motorman knew that passengers were liable to board his car at this platform.  Just beyond the crest of the hill the defendant had suspended across its tracks a sign with "slow" thereon.  It was the duty of the motorman, under the regulations of defendant and in the exercise of reasonable care, to have reduced the speed of his car before it passed the Race Brook crossing and the platform, so that the car might be under reasonable control and might stop at the platform on signal for passengers, and might cross the highway with safety to travelers.  It was the duty of the motorman to keep a reasonable lookout for travelers upon this crossing and for passengers desiring to board his car from this platform.  The motorman had good eyesight. In the exercise of reasonable care, one could see from the car to the platform for a distance of three hundred feet.  The motorman did not see the decedent.  He was not keeping a lookout at this time for travelers upon the crossing or for passengers upon the platform. He did not intend to stop his car at this platform.

The decedent, at the time the car came over the crest of the hill, saw it and continued to see it until it struck her.  She stood near the track, about two feet from the rail, waving some shrubs which she held in her hand as a signal to the motorman to stop.  She did not change her position until she was struck.  It was one of danger from the approaching car.

The jury might reasonably have found that the motorman ought, in the exercise of ordinary prudence, to have become aware that her position was one of peril.  The decedent could, by stepping back, have escaped the peril, and ordinary prudence required her so to do.  It is therefore essential, in order to find the

conditions for the existence of the last-clear-chance doctrine, that (a) the motorman ought in the exercise of reasonable care to have known that the decedent would not endeavor to escape the peril by stepping back out of danger, and that (b) he subsequently had the opportunity, by the exercise of reasonable care, to have saved the decedent · from harm. Practically, condition (a) depends upon whether at any time the motorman ought to have known that decedent apparently would not step back and so remove herself from danger; and condition (b) depends, first, upon where the car was when the motorman ought to have known that the decedent would not step back from the track and out of danger, and second, whether the motorman thereafter, by stopping the car, or slowing down its speed, or giving warning, could have avoided running his car into the decedent; and these are questions of fact to be resolved upon conflicting evidence. We think the refusal of the trial court to set aside the verdict, on the ground that the facts did not warrant the application of the last-clear-chance doctrine, was not error.

The evidence in no aspect warranted a conclusion of wanton misconduct. The motorman was entitled to anticipate, for a time at least, that the decedent would remove herself from her position of peril. There is nothing in the evidence to indicate that passengers were accustomed to stand within this zone of danger when cars were approaching, or, that being there, they were not accustomed to withdraw, as cars approached, beyond the danger point, and that the motorman knew or ought to have known this. Without this factor, one of the necessary elements to constitute wanton misconduct in a case of this character would be absent. The decedent upon the railway platform was in a different situation from the traveler upon a highway crossing.

In view of our conclusion upon the facts in evidence, we have no occasion to consider the instruction to the jury upon the subject of wanton misconduct.

The trial court was in error in submitting the case to the jury upon the issue of wanton misconduct.

There is error, the judgment is set aside and a new trial is ordered.