EVA TEFFT, ADMINISTRATRIX (ESTATE OF CLIFFORD P. TEFFT) *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued November 1st, 1932—decided January 10th, 1933.

*Louis Feinmark,* with whom were *Harold F. Rosen* and *Morris Melnick,* for the appellant (plaintiff).

*Fleming James, Jr.,* with whom, on the brief, was *Edward R. Brumley,* for the appellee (defendant).

AVERY, J. The plaintiff brought this action, as administratrix, to recover damages for the death of her husband, Clifford P. Tefft, who was killed by a westbound express train near the East River railroad station of the defendant company in the town of Madison at about one-twenty-six a.m. September 29th, 1929.

At the trial, many of the facts were not in dispute.

Tefft, the deceased, was a member of a volunteer fire company in the town of Madison. At about one o'clock in the morning of September 29th, 1929, a barn, located about one hundred and fifty feet south of the main line tracks of the defendant company at East River, was found to be on fire, and an alarm was given. The deceased drove from his home in an automobile to the scene. When he arrived, the fire was burning brightly, and some embers had started flames upon an adjoining dwelling-house. It was decided that a line of hose should be run from a hydrant north of the main line tracks of the railroad company to provide water.

Someone shouted orders to that effect while the deceased was sitting in the driver's seat of the hose truck, which was a Ford runabout, and carried the fire hose. The plaintiff claimed that at about this time someone shouted to John Dwyer to go to the tower house nearby and stop all trains, as they were about to lay a hose over the railroad, and that this conversation took place within the hearing of the deceased. The latter thereupon drove his truck by road through an underpass to the north side of the railroad. There was no crossing at grade at this point of any kind, either public or private. After the hose was attached to the hydrant, deceased attempted to drive the truck back across the rails, and was struck by a westbound train, and killed. At East River, the railroad has two lines of main track running straight to the east, for a distance of nineteen hundred feet, and for a long distance to the west. The operation of trains is controlled by a block signal system. One signal is located at Madison, some two miles to the east, and the other at Guilford, some miles to the west. About two hundred and fifty feet west of the point of the accident was a cabin used by a leverman. When the deceased

started to drive the fire truck from the fire to the hydrant at the north of the tracks, Dwyer went to the cabin and notified the leverman to stop all trains as they were about to lay a line of hose. There was controversy at the trial as to the duties of the leverman, the plaintiff claiming that the latter had control of two signals regulating the movement of westbound trains, a distant signal located about a mile and a half east of the place of the accident, and a home signal located near the East River station. The plaintiff claims that after the leverman was notified to stop trains, he had opportunity to set these signals and stop the westbound express by which the deceased was killed. The defendant, on the other hand, claimed that the leverman had no authority or control over the movement of trains on the main line track, his duties being restricted to the operation of certain switches and crossovers in that vicinity; and, in addition, the defendant claimed, as a principal defense, that within a few seconds after the leverman had been notified to stop trains, the headlight of the locomotive which killed the deceased was already visible; and that the leverman had no opportunity to stop the train which was already within the block and close to the scene.

The fundamental claims of the plaintiff on the trial were that the engineer was negligent in failing to exercise proper control of his train and striking the deceased under the circumstances existing; and that the leverman was negligent in failing to take prompt action to stop the train before it reached the scene of the accident. By its verdict, the jury resolved both of these claims in favor of the defendant. On this appeal, the appellant alleges various errors of the court in its instructions to the jury, in its failure to instruct, and certain rulings on evidence.

Three of the assignments of error deal with the request of the plaintiff that the jury be instructed as to the duty of the defendant as a landowner toward the deceased, who was crossing the railroad at a place not provided for the purpose of conveying a hose from a hydrant to a fire to be used in extinguishing the latter. The claim of the plaintiff is that the deceased was a licensee under the circumstances, and that the defendant owed the duty not to wantonly or wilfully injure him. In its charge, the court held the defendant to a higher duty than that to refrain from wilfulness or wantonness, for the jury were told that the defendant was bound to exercise ordinary care not to injure the deceased. As these instructions were more favorable to the appellant than the instructions requested, she cannot complain. *Hull* v. *Thoms,* 82 Conn. 647, 651, 74 Atl. 925. Furthermore, there was no foundation in the facts claimed to have been proven by the plaintiff to justify a charge of wilful or wanton misconduct. *Pond* v. *Connecticut Co.,* 95 Conn. 437, 440, 111 Atl. 621. At the point where the deceased attempted to drive the truck across the tracks, they were elevated so that there was a steep grade before the truck reached the first rail; the tops of the rails were nine inches or more above the trap rock ballast, and a switch rod ran along between the tracks and elevated above the level of the ground more than a foot.

The complaint laid a foundation for the application of the doctrine of supervening negligence, and several requests to charge, made by the plaintiff, asked for instructions to the jury upon this point. The court charged there was no basis under the evidence for the application of this doctrine. No substantial change can be made in the finding, and from it it appears that the plaintiff claimed to have proven that the fire truck,

as it approached the tracks, struck the first or northerly rail, and bounded back. It then went ahead again, its front wheels passed over the first rail, and when they reached the second rail, the truck was struck by the westbound express train traveling at a speed of more than sixty miles an hour. It nowhere appears how far back the truck rebounded from the rail. The facts claimed by the plaintiff to have been proven show that when it came up the second time, it jumped over the rail, and was almost immediately hit. The limits of the position of peril for one crossing a railroad track are "the space occupied by the track and adjoining space so near to it that anyone within it is liable to injury by an approaching car." *Correnti* v. *Catino*, 115 Conn. 213, 222, 160 Atl. 892. Thus, the zone of peril is the path of the train. The finding does not furnish any information as to the extent of the overhang of the train beyond the rails, so that whether when the truck rebounded from the rail it was in a position of peril or not would be a matter of speculation. At the moment of striking the rail, the front of the truck was in the zone of peril, but there is no indication that it was in any danger after it bounded back until the driver caused it to move forward again. It undoubtedly was within the zone of peril when it mounted the north rail, and was in it thereafter until struck by the train; but the plaintiff's claims of proof fail entirely to show how far away the train was when the truck came within the zone of peril, and an inference that it was in the zone of peril long enough for the engineer to have opportunity to do anything which would have avoided the accident would rest entirely on speculation. The burden of proving the necessary facts to establish the elements justifying the application of the doctrine of supervening negligence is upon the plaintiff; *Plona* v. *Connecticut Co.*, 101

Conn. 445, 448, 126 Atl. 529; and if the plaintiff fails to afford a reasonable basis for finding each and all of these elements to have existed, the doctrine may not be applied. *Petrillo* v. *Connecticut Co.*, 92 Conn. 235, 236, 102 Atl. 607; *Curtis* v. *Bristol & Plainville Electric Co.*, 102 Conn. 238, 128 Atl. 517; *Oddwycz* v. *Connecticut Co.*, 108 Conn. 71, 142 Atl. 406; *Budaj* v. *Connecticut Co.*, 108 Conn. 474, 476, 143 Atl. 527. The trial court did not err in instructing the jury that the doctrine of supervening negligence had no application to the facts in this case.

The plaintiff requested the court to charge the jury relative to the duty of the railroad company not to cut a line of hose laid across its track. This request was inappropriate because no fire hose had been laid across the track prior to the collision. Another request related to the duty of the engineer to anticipate the presence of hose and firemen on the tracks near a fire. Although the court did not charge in the exact language of the request, it called attention to the allegation of negligence, on the part of the train crew, contained in the complaint. It outlined in general terms the duty of these men to use due care, and required them to see what ordinary persons would have seen under the circumstances, including the existence of the fire; and required the jury to decide whether, all things considered, a reasonably prudent engineer would have had grounds for expecting to find a fire truck where this one was. The charge of the court was adequate for the guidance of the jury upon this subject.

The plaintiff requested instructions to the effect that the deceased was acting in an emergency, and so not held to the exercise of the same degree of care and caution as under ordinary circumstances; also that his conduct was to be measured by the standard applicable

to efforts made in good faith to save life or property from damage by fire, in that one may lawfully go upon the premises of another for that purpose without being regarded as a trespasser. These requested instructions, however, had no application to the situation in the present case. The deceased was not killed at the fire, but while going to it and on the premises of a third party. When an alarm of fire is sent out, it is of great importance that it be answered with celerity; but the driver of fire apparatus, proceeding to a fire, is bound to exercise the care and control for his own safety and that of others which is reasonable under the circumstances. *Farrell* v. *Fire Ins. Salvage Corps,* 179 N. Y. Sup. 477, 481; *Thompson* v. *Pennsylvania R. Co.,* 215 Pa. St. 113, 64 Atl. 323; *Balthasar* v. *Pacific Electric Ry. Co.,* 187 Cal. 302, 202 Pac. 37, 40. The jury were told that Tefft was required to use the care of a reasonably prudent man under the circumstances; and, in this connection, were instructed that they should take into consideration whether Tefft knew, or had good reason to suppose, that trains were being stopped because of the plans of the firemen, and that such knowledge would have a bearing upon the reasonableness of his actions. The charge of the court was adequate for the guidance of the jury upon this point.

The court instructed the jury to disregard, as far as the leverman was concerned, defendant's rule No. 1200, referred to in argument, which provides that if anything should "endanger the safety of trains . . . [station agents] must see that proper signals are immediately displayed." As far as appears from the record, this rule was not in evidence, which disposes of this assignment of error. *Jackiewicz* v. *United Illuminating Co.,* 106 Conn. 302, 309, 302 Atl. 147.

The defendant introduced an engineer of the train

as a witness; and, on cross-examination, he was questioned with reference to his knowledge of the location of the fire, and had denied that he knew its exact location. He was then asked whether or not a rule was in effect requiring firemen, when not engaged in firing, "to observe switch and train signals and notify enginemen of any evidence of danger or irregularity." The plaintiff's claim upon the appeal is that her purpose was to claim that the fireman would be presumed to have complied with his duty under the rule, and thus to attack the statement of the witness to the effect that he did not know the exact location of the fire. The bearing of this rule upon the direct evidence of the engineer that he did not know the exact location of the fire and the possible purpose of the plaintiff to use it as now claimed would be far from obvious upon the trial, and the record does not disclose that these were presented to the trial court as a basis for the admission of the evidence. Under these circumstances, we cannot find error in the ruling of the trial court. *State* v. *Mosca,* 90 Conn. 381, 389, 97 Atl. 340.

The plaintiff offered in evidence a rule of the defendant company requiring enginemen "if a fire is discovered on or near the company's property . . . [to] give the fire alarm at once, and then again when passing the next section gang." This rule is clearly immaterial, and was properly excluded. The other claimed errors do not require discussion.

There is no error.

In this opinion the other judges concurred.