JOSEPH D. COTE, ADMINISTRATOR (ESTATE OF ALINE COTE) *v.* H. S. PALMER ET ALS., TRUSTEES.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 2—decided November 26, 1940.

*Edwin H. Hall*, with whom, on the brief, was *James W. Grady*, for the appellants (defendants).

*John Keogh, Jr.*, for the appellee (plaintiff).

MALTBIE, C. J.   The plaintiff brought this action to recover damages for the death of his wife caused by a train of the New York, New Haven and Hartford Railroad, represented by the defendant trustees.   The jury could reasonably have found the following facts: The accident occurred in Norwalk at a place where a single track runs east of and beside Elwood Place, separated from it only by a strip of land partly grass and partly gravel, at a point about two hundred feet southerly of a highway crossing over Cross Street. Two paths start at the railroad on the east side of its right of way and run across open ground to Hoyt Street.   These paths are well defined, plainly visible from any direction, and for many years had been much used by pedestrians, including children.   There was a sign located near them, but the lettering on it had become nearly obliterated; after the accident it was repainted to state that the track was private property and to warn people to keep off.   On the west side of Elwood Place are a number of houses standing about fifty feet from the track.   The decedent and her family lived at the corner of Elwood Place and Cross Street. On the morning of the day of the accident, her daughter Aldea, aged eight years, left the house with another

girl about thirteen years old to go to the latter's home on the east side of the track. The course which they took that morning does not appear in evidence, but ordinarily when Aldea was going alone across the tracks she used the street crossing, although when going with older companions she sometimes crossed the track to the paths on the east side. After she had been gone a short time, the mother decided to go to get her. She came out of the house and, when in the roadway in front of it, saw Aldea on the northerly of the two paths, near the track and walking alone toward it. At this time a freight train was approaching, proceeding northerly at a speed of ten to twenty miles an hour. About eight hundred feet southerly of the highway crossing is the exit from a short tunnel. The track was straight from the tunnel to the highway crossing. The train had whistled at a whistling post before entering the tunnel, but not thereafter, and the sound came only faintly to the place where Aldea was approaching the track; no bell on the engine was ringing and while the train was proceeding up the grade it was not making much more than the ordinary noise of an approaching train. The decedent, alarmed lest Aldea get on the track in front of the train, ran toward the entrance to the path in a diagonal direction, accompanied by an older daughter. She was shouting and "waving her arms frantically, as if to attract the girl's attention," "as if to make someone go back from the track"; and her conduct was such as to cause one witness to look to see why she was running. When she started, the train was just emerging from the tunnel. She was struck by the side of the engine just to the rear of the cowcatcher. At that time Aldea had come within about three feet of the track but was not struck by the train. The engineer of the train, seated upon the

right side of the cab, saw the little girl approaching but his vision was considerably obstructed as regards anything occurring upon the left side of the track. The head brakeman was sitting on the left side of the cab, looking forward, and when in that position it was his duty to observe conditions ahead of the engine and, if there was need, to call the engineer's attention to them. He did not see the decedent running toward the track but nothing obstructed his vision and she was well within the range of it had he looked at all to the side of the track.

While the case for the plaintiff as regards the negligence of the defendants is not strong, we cannot hold that the jury could not reasonably have found for him upon this issue. The jury might have found that the long existence and general use of the pathways had resulted in a situation where the defendants were bound to exercise reasonable care toward persons using them; *Ulrich* v. *New York, N. H. & H. R. Co.*, 98 Conn. 567, 569, 119 Atl. 890; and that this use and the surrounding circumstances were such as to impose upon the operators of the train a duty to be watchful to avoid injury to persons they knew or should have known were upon or likely to come upon the track at that point. *Pomponio* v. *New York, N. H. & H. R. Co.*, 66 Conn. 528, 541, 34 Atl. 491; *Dyson* v. *New York & New England R. Co.*, 57 Conn. 9, 22, 17 Atl. 137. The defendants are charged with knowledge of those conditions which the operators of the train should, in the exercise of reasonable care, have observed. *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 324, 76 Atl. 298. The speed of the train could not reasonably have been held to be in itself negligent, but that would not necessarily free the defendants from the duty of reducing it so as to avoid the accident, in view of exceptional circumstances

arising out of danger of injury which they knew or should have known. *Elliott* v. *New York, N. H. & H. R. Co.*, supra, 323. They were not entitled to assume that the little girl approaching the track would stop before reaching the zone of danger to the same extent that they could properly do in the case of an adult, for the lack of judgment natural to so young a child would have to be considered. *Duggan* v. *Boston & Maine Railroad*, 74 N. H. 250, 251, 66 Atl. 829; *Indianapolis, Peru & Chicago Ry. Co.* v. *Pitzer*, 109 Ind. 179, 183, 6 N. E. 310; 3 Elliott, Railroads (3d Ed.) § 1668, p. 571.

Whether the fact that the engineer saw the child approaching on the pathway would in itself have been sufficient to require that he give additional warnings of the train's approach by whistle or bell or that he have it under such control that he could, if necessary, stop it before reaching the path, we need not decide. The jury could reasonably have concluded that the brakeman, sitting in the cab and looking forward, should have seen the decedent running toward the track under such circumstances as to indicate to him that there was need for caution in the operation of the train, that he should have conveyed this information to the engineer and that had he done this, the fact, coupled with the engineer's own knowledge of the approaching child, was sufficient to require that in the exercise of due care, he stop the engine or reduce its speed. If he had done either, the accident would not have occurred.

The question as to contributory negligence on the part of the decedent requires consideration of the so-called "rescue doctrine," for only under that doctrine could she be held free from such negligence. It is succinctly stated in the Restatement as follows: "It is not contributory negligence for a plaintiff to expose him-

self to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm." 2 Torts, § 472. In general support of this principle, the following cases, out of many, may be cited: *Eckert* v. *Long Island R. Co.*, 43 N. Y. 502; *Wagner* v. *International Ry. Co.*, 232 N. Y. 176, 180, 133 N. E. 437; *Dixon* v. *New York, N. H. & H. R. Co.*, 207 Mass. 126, 129, 92 N. E. 1030; *Perpich* v. *Leetonia Mining Co.*, 118 Minn. 508, 512, 137 N. W. 12; *Bond* v. *Baltimore & Ohio R. Co.*, 82 W. Va. 557, 560, 96 S. E. 932; see also 3 Elliott, Railroads (3d Ed.) § 1814; note 19 A. L. R. 4. The statement quoted contains in itself a limitation, for it only applies where the effort to save is "reasonable" and it suggests a question as to the elements involved in determining what effort is to be deemed reasonable. The answer to that, so far as it admits of an answer, is that the same standard generally used in testing whether or not an act is negligent is to be applied; that is, the conduct of an ordinarily prudent person in the same circumstances as the plaintiff. "The question in such a case is not what a careful person would do, under ordinary circumstances, but what would he be likely to do . . . in the presence of such existing peril." *Pittsburg, C., C. & St. Louis Ry. Co.* v. *Lynch,* 69 Ohio St. 123, 131, 68 N. E. 703. Among these circumstances, as the Restatement points out, are undoubtedly the seriousness and imminence of danger, both to the person threatened and the rescuer, and the likelihood or unlikelihood that harm to the former can be averted. Beyond that, an outstanding factor is the instinctive reaction of human nature to the need of one in danger, and where he stands in a close relationship of blood or affection to the rescuer, as in a case like this, a young child to her mother, the reactions naturally incident in such a case. The law can-

not leave out of account the ordinary attributes of human nature; it does not require the same conduct of a child that it does of an adult; and it condones conduct in the face of sudden emergency which it would otherwise condemn. So it does not require of a mother who sees her child in imminent danger of death or serious bodily injury the same conduct as it would demand in the absence of such a situation.

The mere presence of danger and desire to save person or property from injury or destruction will not alone suffice. To venture life where there is no possibility of saving or where the danger is not great or the possibility of loss serious, may go beyond the limit of that which is legally permissible. The cases frequently state that the conduct of the rescuing person must not be rash or reckless or foolhardy, sometimes modifying these words with the adverb "extremely." and sometimes adding the qualifying phrase, "in the judgment of a person of ordinary prudence." The words "rash," "reckless" or "foolhardy" have no fixed significance when used in this connection and furnish an indefinite test, which may fail to give proper value to some of the elements involved. It better accords with the analogies of the law to apply the usual standard of conduct, that is, the conduct of an ordinarily prudent person under the same circumstances. The standard is the same upon which contributory negligence is always to be determined, but in a case like the one before us, it necessarily involves such circumstances as those which have been mentioned. Requiring as it does in a situation where a mother loses her life in an effort to save her child from serious injury or death, an understanding of the ultimate springs of human conduct, there is a peculiar value in submitting the issue to the judgment of the twelve men or women of the jury, schooled, as they have

been, by their various experiences in life. It must be a rare and clear case where a court could override their conclusion.

In the situation before us we have, in the protective instinct of motherhood, one of the strongest incentives to the risk of life; the jury might reasonably conclude that there was imminent danger of death or serious bodily injury to the child and an instinctive reaction to that danger on the part of the mother; and, had the child actually come upon the track in the face of the approaching train, the mother would have barely failed to reach her before it would have been too late. That her sacrifice did not avail to stop the child before she reached the track, cannot be determined from this record; but even if that sacrifice in the ultimate proved unnecessary, that could not affect the decedent's rights, for they were to be determined upon the facts as she might reasonably have believed them to be. *Thoresen* v. *St. Paul & Tacoma Lumber Co.*, 73 Wash. 99, 103, 131 Pac. 645, 132 Pac. 860; *Corbin* v. *Philadelphia*, 195 Pa. St. 461, 469, 45 Atl. 1070. It is true that there must have been a moment when a calm observer would have seen that she could not reach the child in time to protect her and that unless she immediately stopped she would be struck by the train, but her conduct is to be judged, not in the light of cold reason, but in view of the aroused emotions which would animate a mother situated as was the decedent, and of the lack of opportunity for deliberation and the exercise of a cool judgment. *Pennsylvania Co.* v. *Langendorf*, 48 Ohio St. 316, 322, 28 N. E. 172; *Lennehan* v. *Sampson*, 126 Mass. 506, 511; *West Chicago St. Ry. Co.* v. *Liderman*, 187 Ill. 463, 470, 58 N. E. 367. We cannot hold that, as matter of law, the decedent's conduct was not that of a reasonably prudent person in like circumstances, using those words in the

sense we have stated; but we must conclude that the issue was one for the jury to decide. There was no error in the refusal of the trial court to set the verdict aside.

In an appeal from the judgment, the defendants assign several errors in regard to the charge. The trial court submitted to the jury the right of the plaintiff to recover upon the last clear chance doctrine. The claims of the plaintiff as to the facts proven afford no basis for the application of that doctrine. In the case of a railroad the zone of danger is " 'the space occupied by the track and adjoining space so near to it that anyone within it is liable to injury by an approaching car.' " *Tefft* v. *New York, N. H. & H. R. Co.*, 116 Conn. 127, 132, 163 Atl. 762. It is clear that after the decedent came within that space it was too late for the trainmen to avoid the accident. She did not come into a position of peril until substantially the instant she was struck, and in such a situation the doctrine does not apply. *Sherman* v. *William M. Ryan & Sons, Inc.*, 126 Conn. 574, 577, 13 Atl. (2d) 134. In this case we cannot avoid the conclusion that it was error to submit the issue to the jury. *Strong* v. *Carrier*, 116 Conn. 262, 265, 164 Atl. 501; *Lanfare* v. *Putnam*, 115 Conn. 267, 161 Atl. 242; *Fine* v. *Connecticut Co.*, 92 Conn. 626, 630, 103 Atl. 901.

The defendants also assign error in a portion of the charge of the trial court to the effect that if the child's peril was due in part to the decedent's own negligence in leaving her alone and unprotected near the railroad track, the jury were to determine whether that negligence was a contributing factor in bringing about the accident and so whether it would bar a recovery. The defendant's claim is that, if the decedent was negligent in the way stated, it would, as a matter of law, bar recovery. The only claim of proof in the finding with

reference to this matter is that of the plaintiff to the effect that Aldea had gone across the tracks with an older girl to play at the latter's home. This would, of course, be no basis for a finding of negligence on the part of the decedent of the nature of that referred to in the charge, and the statement of the trial court was at worst too favorable to the defendants.

In the course of the charge the trial court referred to § 3708 of the General Statutes, which requires that the person in control of the engine of a railroad train shall commence sounding the bell or whistle when such engine is approaching and is within eighty rods of the place where the railroad crosses any highway at grade and shall keep such bell or whistle occasionally sounding until the engine shall have crossed the highway. The requirements of this statute are for the protection of persons using highway crossings, and a failure to obey it would not, as matter of law, constitute negligence as regards persons crossing the tracks to the paths involved in this case. *Hassett* v. *Palmer*, 126 Conn. 468, 472, 12 Atl. (2d) 646. The trial court, it is true, pointed out, in connection with its reference to the statute, that the complaint contained no basis for finding negligence because of a failure to comply with its provisions, and stated that reference was made to it only in connection with the question as to whether or not those in charge of the engine would be responsible for Aldea's getting into a dangerous position with reference to the railroad track. The fact of the failure to blow the whistle or ring the bell might be a material element in the case, but the statute was foreign to the issue and the trial court should not have submitted it to the jury.

The trial court did not grant a request to charge that the failure of the plaintiff to call Aldea as a witness permitted the jury to draw an inference that her

testimony would have been unfavorable to him. Ordinarily such an inference is permissible where a party fails to call as a witness one whom it is within his power to produce and who would naturally have been produced by him. *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 Atl. 461; *Ryan* v. *Scanlon,* 117 Conn. 428, 433, 168 Atl. 17. Aldea was, however, only eight years old, and any testimony she might give would naturally be subject to the infirmities incident to her youth. The trial court lacked such knowledge as to her qualification and credibility as a witness as would have resulted from her being called to the stand and it might well have seemed to it that under the circumstances the requested charge would have unfairly implied testimonial qualifications and abilities which she might not in fact possess. We cannot say that the trial court was not justified in refusing to grant the request to charge.

There is error; the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.