******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARLINE ADESOKAN ET AL. *v.* TOWN OF BLOOMFIELD ET AL.
## (SC 20753)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.*

### *Syllabus*

Pursuant to statute (§ 52-557n (a) (2) (B)) and the common law of this
state, respectively, municipalities and their employees enjoy qualified
immunity from liability, for their negligent acts or omissions in the
performance of duties that require the exercise of judgment or discre-
tion, "[e]xcept as otherwise provided by law . . . ."

Pursuant further to statute (§ 14-283 (d)), the privileges afforded to the
operator of an emergency vehicle by § 14-283 (b), which include the
right to disregard certain traffic laws, signals, and signs under certain
conditions, "shall not relieve the operator of [the] emergency vehicle
from the duty to drive with due regard for the safety of all persons
and property."

The plaintiff, individually and on behalf of her two minor children, sought
to recover damages from the defendants, the town of Bloomfield, its
police department, and one of its police officers, J, in connection with
injuries the plaintiff and her children sustained when the vehicle in
which they were travelling was struck by J's police cruiser. At the time
of the collision, J was responding to a report of a possible abduction
and travelling in the southbound lane of traffic several vehicles behind
the plaintiff's vehicle. The plaintiff arrived at an intersection and made
a lefthand turn, but J, while traveling at a speed exceeding seventy
miles per hour, moved into the northbound lane, attempted to pass,
and collided with the plaintiff's vehicle. The plaintiff raised claims of
negligence, negligent supervision, and respondeat superior, and the
defendants moved for summary judgment on the ground that those
claims were barred by discretionary act immunity under § 52-557n (a)
(2) (B). The trial court granted the defendants' motion for summary
judgment and rendered judgment for the defendants, concluding that
J's operation of the police cruiser constituted a discretionary act that
was subject to governmental immunity. In doing so, the court relied on
this court's recent decision in *Borelli* v. *Renaldi* (336 Conn. 1), in which
this court concluded that "the duty to drive with due regard" in § 14-
283 (d) imposed a discretionary duty to act with respect to a police
officer's decision to initiate and to continue a pursuit of a fleeing motor-
ist. On appeal, the plaintiff claimed, inter alia, that the trial court improp-
erly had relied on *Borelli* and incorrectly concluded that discretionary
act immunity barred her claims, insofar as § 14-283 (d) imposes a ministe-
rial duty on emergency vehicle operators "to drive with due regard for
the safety of all persons and property."

*Held* that the trial court improperly granted the defendants' motion for
summary judgment, as the defendants were not entitled to discretionary
act immunity under § 52-557n (a) (2) (B) because such immunity does
not apply to the manner in which an emergency vehicle is operated in
light of the except as otherwise provided by law savings provision in
§ 52-557n (a) (2) (B) and the codified, common-law duty to drive with
due regard for the safety of all persons and property set forth in § 14-
283 (d):

This court previously has recognized that § 52-557n (a) was not intended
to bar all civil actions arising from a municipal employee's discretionary
acts and that the except as otherwise provided by law savings clauses
in § 52-557n (a) encompass common-law exceptions to the discretionary
act immunity provided by that statute, such that, if liability attaches to
the discretionary act of a municipal employee under the common law,
§ 52-557n does not supersede the common-law doctrine, and discretion-
ary act immunity does not apply.

This court concluded that §§ 14-283 and 52-557n (a) (2) (B) were ambigu-

ous and looked to the legislative history of those statutes, which demonstrated that the legislature, having codified the reasonable care standard in § 14-283 (d) fifteen years before enacting § 52-557n as part of the Tort Reform Act of 1986, understood that negligence in the operation of motor vehicles was not intended to be shielded by governmental immunity, either before or after the passage of § 52-557n.

The existence of certain indemnification statutes also reflected the fact that, at common law, municipal employees were personally liable for negligently operating an emergency vehicle when they failed to exercise the due care of a reasonably prudent person under the circumstances, both before and after the enactment of § 52-557n.

Moreover, this court's decision in *Tetro* v. *Stratford* (189 Conn. 601), which was decided three years before the enactment of § 52-557n, also addressed the manner in which an emergency vehicle is operated, and *Tetro* squarely demonstrated that, prior to the enactment of § 52-557n, municipalities were not immune from suits arising from collisions of their vehicles engaged in emergency operation, that the legislature and the courts understood that municipalities could be held liable under then existing statutory and common law for the negligence of their emergency vehicle operators, and that, although § 14-283 (b) granted operators of emergency vehicles a privilege by relieving them from a presumption of negligence per se for violating ordinary traffic laws, such operators were not relieved from, and remained subject to, the existing, common-law duty of care to drive with due regard for the safety of all persons and property.

Accordingly, granting governmental immunity in this context would effectively permit operators of emergency vehicles to drive without regard for a codified, common-law duty, and that result would be inconsistent with the legislature's understanding of the reach of § 52-557n when it enacted that statute, which was, unless otherwise indicated, intended to reflect the current state of the law.

Further support for this court's conclusion that discretionary act immunity did not apply in this context could be found in the fact that the operation of an emergency vehicle is not one of the enumerated exceptions to liability provided in § 52-557n (b), which effectively confer governmental immunity in specific contexts, and, if the legislature had intended to include emergency vehicle operation within the specific conduct subject to immunity in that statutory provision, it could have done so.

Furthermore, although this court has applied the discretionary/ministerial framework in recent decisions, including *Borelli*, to determine the scope of § 52-557n (a) (2) (B) as it relates to claims of immunity for the consequences of certain types of vehicular negligence involving police officers, and the parties in the present case largely limited their arguments to that issue, those cases did not concern the direct conduct targeted by the legislature in § 14-283 (d), namely, the operation of an emergency vehicle with the concomitant "duty to drive with due regard for the safety of all persons and property," and it was unnecessary to decide whether the duty to drive with due regard required by § 14-283 (d) was ministerial or discretionary in nature in light of this court's conclusion that the discretionary act immunity provided by § 52-557n (a) (2) (B) does not apply as a matter of law to the operation of emergency vehicles by virtue of the savings provision in § 52-557n (a) (2) (B).

In addition, this court's reading of §§ 14-283 and 52-557n was further supported by the legislature's choice, in enacting § 14-283 (d), to deviate from the Uniform Vehicle Code, on which § 14-283 (d) was based, and to impose only a negligence standard rather than a reckless disregard standard, and by recent legislative activity, which demonstrated the legislature's repeated attempts to ensure that governmental immunity does not apply in this context.

Argued January 13—officially released August 1, 2023

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligence, and for other relief, brought

to the Superior Court in the judicial district of Hartford, where the court, *Noble*, *J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed. *Reversed*; *further proceedings*.

*John A. Sodipo*, for the appellants (plaintiffs).

*Dennis M. Durao*, with whom was *Andrew J. Glass*, for the appellees (defendants).

*Thomas R. Gerarde* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Aaron S. Bayer* and *Nathan Guevremont* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*James J. Healy* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ROBINSON, C. J. We now take up the issue, left open by our recent decisions in *Daley* v. *Kashmanian*, 344 Conn. 464, 280 A.3d 68 (2022), and *Borelli* v. *Renaldi*, 336 Conn. 1, 243 A.3d 1064 (2020), of whether the special defense of governmental immunity for discretionary acts; see General Statutes § 52-557n (a) (2) (B);[1] bars claims of negligence against drivers operating an "emergency vehicle" pursuant to the privileges provided by the emergency vehicle statute, General Statutes § 14-283.[2] The plaintiff, Marline Adesokan, individually and on behalf of her two minor children, appeals[3] from the judgment of the trial court in favor of the defendants, the town of Bloomfield (town), the Bloomfield Police Department, and one of its police officers, Jonathan W. Sykes. On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment, in part because the court misapplied *Borelli* in determining that Sykes' "duty to drive with due regard for the safety of all persons and property" in accordance with § 14-283 (d) was discretionary in nature for purposes of governmental immunity under § 52-557n (a) (2) (B). We conclude that the defense of discretionary act immunity provided by § 52-557n (a) (2) (B) does not apply to claims arising from the manner in which an emergency vehicle is operated under the privileges provided by § 14-283. Accordingly, we reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On August 10, 2017, Sykes responded to a dispatch call for a possible abduction in progress and headed southbound on Tunxis Avenue in Bloomfield, with his police cruiser's emergency lights and siren activated. The plaintiff also was traveling southbound on Tunxis Avenue, heading to daycare and summer camp, but was positioned several cars ahead of Sykes as he approached from behind. As Sykes approached in his cruiser, the three cars directly behind the plaintiff's vehicle yielded to the right. At the intersection of Tunxis Avenue and Mills Lane, where there was nearby road construction, Sykes attempted to pass the plaintiff's vehicle on the left side in the northbound lane. Traveling at 71.8 miles per hour on a roadway with posted speed limits of 30 and 40 miles per hour, Sykes' cruiser collided with the driver's side of the plaintiff's vehicle when the plaintiff made a left turn at the same time Sykes attempted to pass her in the northbound lane. The plaintiff and her children sustained personal injuries as a result of the collision.

The plaintiff brought this action against the defendants, claiming negligence, negligent supervision, and respondeat superior. The defendants subsequently moved for summary judgment, claiming that discretionary act immunity under § 52-557n (a) (2) (B) barred the plaintiff's claims. Relying on this court's interpretation

of the phrase "due regard," as contained in § 14-283 (d), in *Borelli* v. *Renaldi*, supra, 336 Conn. 14–15, the trial court concluded that, "because no ordinance, regulation, rule, policy, or any other directive compelled Sykes in a prescribed manner, the operation of his police cruiser . . . constituted a governmentally immune discretionary act." The court, therefore, granted the defendants' motion for summary judgment and rendered judgment accordingly. This appeal followed.

On appeal, the plaintiff principally claims that the trial court incorrectly concluded that discretionary act immunity barred her claims. The plaintiff argues that § 14-283 (d) imposes a ministerial rather than a discretionary duty on emergency vehicle operators "to drive with due regard for the safety of all persons and property." Relying on *Daley* v. *Kashmanian*, supra, 344 Conn. 464, the plaintiff further contends that our trial courts uniformly have concluded that the operation of an emergency vehicle, at least in a manner beyond the privileges provided by § 14-283 (b) (1), is a ministerial function, and she urges us to conclude the same for emergency operation within the privileges provided by that statute. The plaintiff argues that our decision in *Borelli* v. *Renaldi*, supra, 336 Conn. 1, is distinguishable because the present case concerns only the manner in which Sykes operated his emergency vehicle, whereas *Borelli* concerned a police officer's decision to engage in pursuit. The plaintiff also relies on public policy and argues that our more recent decision in *Daley* recognized that conferring blanket immunity on the operation of an emergency vehicle would lead to unworkable results and essentially give municipal police officers "a blank check, without repayment, to act unreasonably without regard to the safety of the public."

The defendants argue in response that the driving maneuvers taken by a municipal employee who operates an emergency vehicle, so long as he or she is authorized by § 14-283, are discretionary, judgment based decisions to which governmental immunity applies. They view the privileges provided by § 14-283 (b) as vesting the emergency operator with discretion, and the limiting language in subsection (d) as demonstrating only that reckless conduct is not permitted in the operator's exercise of the privileges provided by subsection (b). The defendants argue that it would illogically contravene fundamental tenets of statutory interpretation to conclude that the "due regard" language of § 14-283 (d), as interpreted in *Borelli*, affords discretion to a police officer in deciding whether to engage in a pursuit, but also imposes a ministerial duty with respect to the operation of the vehicle "when answering an emergency call." (Internal quotation marks omitted.) Furthermore, they maintain that, because the defense of discretionary act immunity is subject to three exceptions,[4] including the identifiable person, imminent harm exception, the plaintiff's "blank check" argument has

no merit. We, however, disagree with the defendants and conclude that the defense of discretionary act immunity provided by § 52-557n (a) (2) (B) does not apply as a matter of law to claims arising from the manner in which an emergency vehicle is operated under the privileges provided by § 14-283.[5]

As a preliminary matter, although § 52-557n (a) (1) was the subject of an amendment in 2023; see Public Acts 2023, No. 23-83, § 1 (P.A. 23-83);[6] the legislature did not expressly provide that P.A. 23-83 should apply retroactively, and we presume that statutory amendments affecting substantive rights apply prospectively. See, e.g., *Maghfour* v. *Waterbury*, 340 Conn. 41, 47–49, 262 A.3d 692 (2021); see also General Statutes § 55-3. Accordingly, we refer to the operative version of § 52-557n (a) (1), which does not expressly limit governmental immunity for emergency operators, for purposes of this appeal.

We begin by setting forth the standard of review and background legal principles. It is well established that whether the trial court properly granted summary judgment in favor of the defendants on governmental immunity grounds is a question of law over which our review is plenary. See, e.g., *Daley* v. *Kashmanian*, supra, 344 Conn. 478 ("the ultimate determination as to whether the defendants are entitled to governmental immunity is a question of law" (internal quotation marks omitted)); *Ventura* v. *East Haven*, 330 Conn. 613, 634, 199 A.3d 1 (2019) (issue of governmental immunity is question of existence of duty of care). To the extent this appeal requires us to consider whether the legislature contemplated that municipalities would be immune from liability under § 52-557n (a) (2) (B) for negligence in the operation of an emergency vehicle pursuant to the privileges provided by § 14-283, that inquiry presents a question of statutory interpretation governed by well established principles under General Statutes § 1-2z.[7] See, e.g., *Daley* v. *Kashmanian*, supra, 478.

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [a ministerial act] refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . .

Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Internal quotation marks omitted.) Id., 479.

"Because this appeal concerns the actions of police officers and the [town's] police department, we also observe that [i]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . Indeed, this court has long recognized that it is not in the public's interest to [allow] a jury of lay[persons] with the benefit of 20/20 hindsight to second-guess the exercise of a [police officer's] discretionary professional duty. Such discretion is no discretion at all. . . . Thus, as a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." (Internal quotation marks omitted.) Id., 481.

Our consideration of the issue in this appeal is informed by our recent application of these principles in *Borelli* v. *Renaldi*, supra, 336 Conn. 1, and *Daley* v. *Kashmanian*, supra, 344 Conn. 464. In *Borelli*, we held that the duty "to drive with due regard" provided by § 14-283 (d) requires the exercise of a police officer's judgment in determining whether to initiate and continue pursuit of a fleeing motorist and, in that respect, is entitled to discretionary act immunity. See *Borelli* v. *Renaldi*, supra, 9–10. The plaintiff in *Borelli* alleged that the defendant police officer was negligent in choosing to pursue the vehicle of a suspect law violator, which caused the law violator's vehicle to strike an embarkment, killing one of the passengers. Id., 6. Because the plaintiff's claims on appeal were confined to the officer's decision to initiate pursuit, we did not consider "the much broader question of whether and under what circumstances the duty to drive with due regard for the safety of others is discretionary or ministerial." Id., 9 n.5. We concluded that, because the "due regard" requirement of § 14-283 (d) imposed a "general duty" that required officers to exercise judgment in determining whether to pursue a fleeing motorist, the duty *to act* was discretionary and, thus, afforded immunity under § 52-557n (a) (2) (B). Id., 14–15; see id., 10, 20.

Subsequently, in *Daley* v. *Kashmanian*, supra, 344 Conn. 464, we held that a police officer's operation of an unmarked vehicle lacking emergency warning devices, known as a " 'soft car,' " was not entitled to governmental immunity because the operation of a non-emergency vehicle, outside the scope of § 14-283, is a highly regulated activity that constitutes a ministerial function. Id., 468. In *Daley*, after surveilling a "group of motorcycles and quads," the defendant police officer, who was operating a soft car, initiated pursuit of the plaintiff, who was driving a motorcycle. Id., 469. During the pursuit, the officer struck the back tire of the plaintiff's motorcycle with the soft car and caused the plaintiff to be ejected from his bike. Id., 470. Because the officer was not engaged in emergency driving pursuant to § 14-283, we concluded that the applicable motor vehicle statutes imposed numerous ministerial duties that the officer had violated by operating the soft car with no lights or sirens. See id., 473–74, 478. In concluding that discretionary act immunity under § 52-557n (a) (2) (B) was inapplicable, we reviewed the motor vehicle statutory scheme and concluded that the relevant motor vehicle statutes established "a ministerial duty insofar as they contain[ed] mandatory statutory language that *itself* limit[ed] discretion in the performance of the mandatory act." (Emphasis in original; internal quotation marks omitted.) Id., 488.

We observe at the outset that the parties in this case largely limit their arguments to the issue of whether "the duty to drive with due regard" required by § 14-283 (d) is a discretionary or ministerial act for purposes of discretionary act immunity under § 52-557n (a) (2) (B). We have determined, however, that we do not need to address whether "the duty to drive with due regard" is ministerial or discretionary in nature, or the related question of whether the imminent harm to identifiable persons exception to discretionary act immunity applies in this case. See footnote 5 of this opinion. It is unnecessary to decide these issues in light of our conclusion that governmental immunity does not apply to emergency vehicle operation by virtue of the "[e]xcept as otherwise provided by law" savings provision in § 52-557n (a).

Pursuant to § 1-2z, we begin with the language of the governmental immunity statute, § 52-557n, which provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." Section 52-557n (a) (2) provides in relevant part that, "[e]*xcept as otherwise provided by law*, a political subdivision of the state *shall not be liable* for damages to person or property caused by . . . (B) negligent acts or omissions which *require the exercise*

*of judgment or discretion* as an official function of the authority expressly or impliedly granted by law." (Emphasis added.) Subsection (b) of § 52-557n then enumerates ten circumstances in which governmental immunity applies irrespective of the liability rule set forth in subsection (a).[8]

It is well settled that exceptions to the discretionary act immunity provided by § 52-557n (a) (2) (B) may be furnished by both statutory and common law. See, e.g., *Grady* v. *Somers*, 294 Conn. 324, 344–46, 984 A.2d 684 (2009). In *Grady,* this court reviewed the legislative history of § 52-557n and concluded that the phrase "[e]xcept as otherwise provided by law" encompasses the common-law, identifiable person, imminent harm exception to discretionary act immunity provided by § 52-557n (a) (2) (B). See id., 341–49. In so concluding, we recognized that the savings clauses in § 52-557n (a) included common-law exceptions because doing so operated to clarify the various terms of the governmental immunity statute at issue, rather than to nullify them.[9] Id., 343. We also noted in our analysis that "the legislature did not contemplate § 52-557n as a bar against *all* civil actions arising from employees' discretionary acts, despite the discretionary act immunity afforded by § 52-557n (a) (2) (B)." (Emphasis added.) Id., 345. Thus, if liability attached under the common law to any discretionary act, § 52-557n did not supersede that common-law doctrine, and discretionary act immunity did not apply.

With this understanding, we now consider the relationship between §§ 14-283 and 52-557n (a) (2) (B). Section 14-283 does not speak in terms of immunity or expressly designate any particular conduct as discretionary. Rather, that statute provides in relevant part that an "operator of any emergency vehicle may . . . proceed past any red light, stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle . . . exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a, 14-219 or 14-307a as long as such operator does not endanger life or property by so doing, and . . . disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions." General Statutes § 14-283 (b) (1) (B) through (D). Moreover, § 52-557n contains no express or implied reference to § 14-283, which reasonably calls into question whether § 52-557n, as the later enacted statute, was intended by the legislature to confer immunity. Finally, and significantly, § 14-283 (d) provides that "[t]he provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property," which typically is not seen in statutes conferring immunity.[10] See, e.g., *Centerplan Construction Co., LLC* v. *Hartford*, 343 Conn. 368, 410, 274 A.3d 51 (2022) ("[a]lthough it is generally true that

silence alone does not [create § 1-2z] ambiguity . . . silence or a lack of detail *may* amount to ambiguity," especially "when the missing subject reasonably is necessary to effectuate the provision as written" (citation omitted; emphasis in original; internal quotation marks omitted)).

Taking all of these considerations into account, we conclude that the provisions at issue are ambiguous and turn to extratextual sources for their proper construction. In doing so, however, we are particularly mindful that "[i]nterpreting a statute to impair an existing interest or to change radically existing law is appropriate only if the language of the legislature plainly and unambiguously reflects such an intent." (Internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001). In a similar fashion, "[w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003).

"[W]e must, if possible, construe two statutes in a manner that gives effect to both, eschewing an interpretation that would render either ineffective." (Internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 531, 98 A.3d 55 (2014). "Therefore, [w]e must, if possible, read the two statutes together and construe each to leave room for the meaningful operation of the other. . . . In addition, [i]f two constructions of a statute are possible, we will adopt the one that makes the statute effective and workable . . . ." (Citation omitted; internal quotation marks omitted.) Id., 532. Reading the two statutes together in light of their legislative purposes, we conclude that "the duty to drive with due regard" mandated by § 14-283 (d) functions as an exception "provided by law" under the savings clause applicable to discretionary act immunity in § 52-557n (a) (2) (B).

Numerous historical determinants lead us to this conclusion. When first enacted, § 14-283 simply granted ambulances, fire trucks and, later, police officers the right of way over all other traffic. See Public Acts 1925, c. 79, § 1; see also General Statutes (1930 Rev.) § 1595; General Statutes (Supp. 1947) § 386i. In 1971, the legislature enacted the relevant provision at issue, subsection (d) of § 14-283; see Public Acts 1971, No. 538; which codified the reasonable care standard articulated by this court in *Voltz* v. *Orange Volunteer Fire Assn., Inc.*, 118 Conn. 307, 311, 172 A. 220 (1934), and *Tefft* v. *New York, New Haven & Hartford Railroad Co.*, 116 Conn. 127, 134, 163 A. 762 (1933), to govern the operation of emergency vehicles, namely, fire apparatus, in response to emergencies.[11] See *Borelli* v. *Renaldi*, supra, 336 Conn.

39 (*Robinson*, *C. J.*, concurring); see also id., 129 (*Ecker*, *J.*, dissenting) (unlike current statute, 1925 act did not include duty of care, and it was not until 1971 that legislature added subsection (d), which expressly codified that duty).

Section 52-557n, which was enacted as § 13 of the Tort Reform Act of 1986 (act), "represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 185, 592 A.2d 912 (1991); see *Borelli* v. *Renaldi*, supra, 336 Conn. 112 (*Ecker*, *J.*, dissenting) ("the provisions of § 52-557n were hammered out as part of a much larger legislative initiative"). Although the act was generally meant to both codify and limit municipal liability, "it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." *Sanzone* v. *Board of Police Commissioners*, supra, 188. Despite this general uncertainty, our recent, in-depth review of the legislative history of § 52-557n in *Daley*, and particularly the testimony of Representative Robert G. Jaekle, the bill's sponsor, demonstrated that "the legislature contemplated negligence in the operation of motor vehicles not to be subject to governmental immunity, both before and after the passage of § 52-557n." *Daley* v. *Kashmanian*, supra, 344 Conn. 485; see id., 484. As we observed previously in this opinion, the savings clauses in § 52-557n (a) preserve and incorporate both common-law and statutory exceptions to municipal immunity, including "the well established law imposing municipal liability for vehicular negligence at the time § 52-557n was enacted . . . ." Id., 487 n.17. Particularly because § 14-283 was enacted prior to § 52-557n, we find instructive the maxim that, "when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other *existing statutes* and the effect that its action or nonaction will have [on] any one of them." (Emphasis added; internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011); see also 29 H.R. Proc., Pt. 16, 1986 Sess., pp. 5912–13, remarks of Representative Jaekle (responding to concerns that § 52-557n would not immunize certain "negligent or wilfully negligent acts" by police officers that were prohibited by recently enacted family violence law).

We likewise find instructive the existence of the indemnification statutes, such as General Statutes § 7-465,[12] which the legislature enacted because police officers and other municipal workers were personally exposed to the risk of common-law negligence liability arising from the performance of their routine job functions. See *Borelli* v. *Renaldi*, supra, 336 Conn. 86 (*Ecker*, *J.*, dissenting) (noting that, if municipal employees were already protected by governmental immunity, "these

indemnification statutes would have been largely unnecessary"). "Prior to the enactment of § 52-557n . . . [n]o serious questions appeared to have been raised as to whether a police officer might be liable for negligence in the operation of a motor vehicle . . . [but, rather] the municipal employer would be responsible for indemnification of an officer found to have been civilly liable, under the provisions of . . . § 7-465 . . . ." (Internal quotation marks omitted.) *Daley* v. *Kashmanian*, supra, 344 Conn. 496–97. These indemnification statutes reflect the fact that municipal employees faced personal liability for negligence in the operation of their emergency vehicles, when they failed to exercise the due care of a reasonably prudent person under the circumstances, both before and after the enactment of § 52-557n. See *Tefft* v. *New York, New Haven & Hartford Railroad Co.*, supra, 116 Conn. 134 ("[w]hen an alarm of fire is sent out, it is of great importance that it be answered with celerity; but the driver of fire apparatus, proceeding to a fire, is bound to exercise the care and control for his own safety and that of others which is reasonable under the circumstances").

Indeed, this court's decision in *Tetro* v. *Stratford*, 189 Conn. 601, 458 A.2d 5 (1983), provides a paradigmatic example of the law governing liability for negligence in the operation of emergency vehicles as it existed at the time the legislature enacted § 52-557n. This court's decision in *Tetro* captures the state of our law on the subject a mere three years prior to the enactment of § 52-557n but more than one decade after the 1971 amendments to § 14-283, thus answering the historical question of whether immunity was conferred on emergency vehicles operators under Connecticut law before the legislature codified the municipal immunity doctrine. Operating as an emergency vehicle "with the police car's siren working and revolving dome light flashing," two police officers in *Tetro* conducted a high-speed pursuit of another vehicle, which then crashed into the plaintiff's car. Id., 603. This court held that, because the plaintiff's injury may have fallen within the scope of the risk created by the officers' act of conducting a police pursuit at high speeds while traveling in the wrong direction on a busy one-way street, the defendant municipality was vicariously liable for the negligence of its officers pursuant to § 7-465. Id., 605–606. In the course of our analysis, we identified other jurisdictions that had "similarly refused to limit police liability for negligent conduct of a [high-speed] chase, as a matter of law, to collisions involving the police vehicle itself"; id., 606; and rejected the defendants' argument that § 14-283 limited the scope of the duty to drive with due regard to incidents involving collisions with the emergency vehicle itself. See id., 607–609. We stated that, because "[t]he effect of [§ 14-283 was] merely to displace the conclusive presumption of negligence that ordinarily [arose] from the violation of traffic rules," the

statute did "not relieve operators of emergency vehicles from their general duty to exercise due care for the safety of others. . . . We . . . conclude[d] that § 14-283 provides no special zone of limited liability once the defendants' negligence has been established." (Citations omitted.) Id., 609–10.

Thus, this court's holding in *Tetro* reflects the understanding of the legislature and the courts that municipalities could be held liable under the existing statutory and common law for the negligence of their emergency vehicle operators prior to the enactment of § 52-557n. Although the 1971 amendment to § 14-283 granted emergency operators a privilege by relieving them from a presumption of negligence per se for violating ordinary traffic laws while engaged in emergency operation; see General Statutes (Rev. to 1972) § 14-283 (b); such operators were not relieved from, and remained subject to, the existing, common-law duty of care to drive with "due regard for the safety of all persons and property." General Statutes § 14-283 (d). Thus, granting governmental immunity in this context would effectively permit emergency operators to drive without regard for this codified, common-law duty—a result that is inconsistent with the legislature's understanding of the reach of § 52-557n when it enacted that statute, which was, unless otherwise indicated, intended to reflect the current state of the law.[13] See, e.g., *Daley* v. *Kashmanian*, supra, 344 Conn. 487 n.17 (savings clauses in § 52-557n "preserve and incorporate common-law exceptions to municipal immunity"); *Doe* v. *Madison*, 340 Conn. 1, 19, 262 A.3d 752 (2021) (" '[t]he tort liability of a municipality has been codified in § 52-557n' "), quoting *Cole* v. *New Haven*, 337 Conn. 326, 337, 253 A.3d 476 (2020); *Durrant* v. *Board of Education*, 284 Conn. 91, 107, 931 A.2d 859 (2007) (recognizing codification of common law under § 52-557n); *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 188 (§ 13 of act generally was intended "both to codify and to limit municipal liability"); see also *Lenard* v. *Dilley*, 805 So. 2d 175, 181 (La. 2002) ("[t]o hold otherwise would have the effect of severely endangering the public safety, as emergency vehicle drivers could at all times engage in ordinarily negligent behavior and be shielded from the consequences of their actions"); cf. *Sanzone* v. *Board of Police Commissioners*, supra, 191–92 (to permit common-law nuisance actions would have rendered meaningless proviso in § 52-557n (a) (1) restricting highway defect actions to those brought under General Statutes § 13a-149).

Although a majority of this court did not find *Tetro* to be controlling authority in *Borelli* because it did not concern the officer's decision to pursue; see *Borelli* v. *Renaldi*, supra, 336 Conn. 24–26; we conclude that *Tetro* is persuasive in the present case because it similarly addressed the manner in which an emergency vehicle is operated. See id., 42 (*Robinson, C. J.*, concurring)

(agreeing with Justice Ecker's dissenting opinion that *Tetro* "would be dispositive, if it [was] in fact on point"). Put differently, *Tetro* squarely demonstrates that, prior to the enactment of § 52-557n, municipalities were not immune from suits arising from collisions of their vehicles engaged in emergency operation. See *Daley* v. *Kashmanian*, supra, 344 Conn. 485 (observing that "the legislature's understanding of the liability of individual police officers—and of the municipalities that employ them pursuant to § 7-465—for the negligent operation of motor vehicles during law enforcement operations is implicitly confirmed by this court's nearly contemporaneous decision in *Tetro*" (footnote omitted)); *Borelli* v. *Renaldi*, supra, 134 (*Ecker, J.*, dissenting) (*Tetro* "confirms in plain terms that drivers of emergency vehicles owe the same duty to abstain from negligent conduct as they have always had under our emergency vehicle statute and at common law—that is, their general duty to exercise due care for the safety of others" (internal quotation marks omitted)). Indeed, in *Daley*, we found it telling that there was "a unanimous precedent, decided shortly before the enactment of § 52-557n, holding that a municipality is liable for its employee's negligent operation of an emergency vehicle engaged in a police pursuit. . . . The legislature thereafter codified the then-existing common law governing municipal liability *without so much as a whisper* of any intention to impact, modify, or even address the law of vehicular negligence in general or the holding of *Tetro* in particular."[14] (Emphasis added; internal quotation marks omitted.) *Daley* v. *Kashmanian*, supra, 486.

Further support for our conclusion is found in the fact that the operation of an emergency vehicle is not one of the enumerated exceptions to liability provided in § 52-557n (b); see footnote 8 of this opinion; which effectively confer governmental immunity in specific contexts. See *Ugrin* v. *Cheshire*, 307 Conn. 364, 384, 54 A.3d 532 (2012) ("*Spears* merely observes that subsection (b) of § 52-557n, which references subsection (a), sets forth many exceptions under which an injured party may not pursue a direct action in negligence against a municipality" (internal quotation marks omitted)). Had the legislature intended to include emergency operation within the category of specific conduct subject to immunity, it could have done so. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 36, 268 A.3d 630 (2022); see also *Borelli* v. *Renaldi*, supra, 336 Conn. 109 (*Ecker, J.*, dissenting) (citing doctrine of expressio unius est exclusio alterius and noting that "the legislature manifestly paid very close attention to detail in fashioning subsection (b)").

We acknowledge that, in *Borelli* and *Daley*, we applied the discretionary/ministerial framework to determine the scope of § 52-557n (a) (2) (B) as it relates generally to claims of immunity for the consequences

of certain types of vehicular negligence involving police officers.[15] See *Daley* v. *Kashmanian*, supra, 344 Conn. 487 and n.17; *Borelli* v. *Renaldi*, supra, 336 Conn. 10. However, neither case concerned the direct conduct targeted by the legislature in § 14-283 (d), namely, the *operation* of the emergency vehicle with the concomitant "duty *to drive* with due regard . . . ." (Emphasis added.) In fact, in *Daley*, we assumed that, even if emergency driving "lies outside the ministerial/discretionary dichotomy altogether, we would conclude that the well established law imposing municipal liability for vehicular negligence at the time § 52-557n was enacted . . . illustrates that the legislature did not contemplate § 52-557n as a bar against *all* civil actions arising from employees' discretionary acts, despite the discretionary act immunity afforded by § 52-557n (a) (2) (B)." (Emphasis in original; internal quotation marks omitted.) *Daley* v. *Kashmanian*, supra, 487 n.17. As we previously have noted, "*Grady* and other decisions of this court recognize that the savings clauses in § 52-557n (a), which provide that the terms of the statute govern '[e]xcept as otherwise provided by law,' preserve and incorporate common-law exceptions to municipal immunity"; id.; including exceptions to immunity for personal injuries caused by the negligent operation of a motor vehicle, whether it is being operated for routine purposes or as an emergency vehicle. Therefore, because the legislature is presumed to be aware of all existing statutes, a conclusion that the savings clauses in § 52-557n (a) embrace the prevailing duty codified in § 14-283 (d) "would operate to clarify the various terms of § 52-557n that are at issue, rather than to nullify them impermissibly." *Grady* v. *Somers*, supra, 294 Conn. 343; see id., 348 ("the legislature's intent, when it enacted § 52-557n, [was] to create a harmonious body of law governing municipal liability").

We also deem it significant that, by its own terms, § 14-283 (d) imposes only a negligence standard of care on emergency vehicle operators, rather than the recklessness standard set forth in the Uniform Vehicle Code (UVC) and followed by other sister state jurisdictions.[16] See *Borelli* v. *Renaldi*, supra, 336 Conn. 139–40 and nn. 63–64 (*Ecker, J.*, dissenting). Connecticut modeled its emergency vehicle statute on § 11-106 of the UVC, which provides in relevant part: "The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from *the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's reckless disregard for the safety of others*." (Emphasis added.) National Committee on Uniform Traffic Laws and Ordinances, Uniform Vehicle Code (2000 Rev.) § 11-106 (d), p. 126. In doing so, the legislature meaningfully "chose to retain the 'due care' negligence standard without adding language contained in the UVC that could be interpreted to adopt a recklessness standard of care,"

and, "[a]s a general matter, courts find significance in a state's decision to adopt a model act but deviate from a particular provision thereof." *Borelli* v. *Renaldi*, supra, 140–41 (*Ecker, J.*, dissenting); see *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 310, 140 A.3d 950 (2016) ("the absence of a word in a portion of a statute is surely significant in interpreting [a] statute"). New York's emergency vehicle statute; see N.Y. Veh. & Traf. Law § 1104 (e) (McKinney 2011);[17] provides an instructive contrast. Unlike § 14-283 (d), which refers only to "due regard," § 1104 (e) refers to both "due regard" and "reckless disregard" for the safety of others. Thus, New York, like the UVC, requires that operators act in "reckless disregard for the safety of others" for the defense of governmental immunity not to apply. N.Y. Veh. & Traf. Law § 1104 (e) (McKinney 2011); accord National Committee on Uniform Traffic Laws and Ordinances, supra, § 11-106 (d), p. 126; see *Anderson* v. *Commack Fire District*, No. 16, 2023 N.Y. Slip Op. 02028 (April 20, 2023) (The court noted that § 1104 "expressly establishes a reckless disregard standard" for determining civil liability and that, "in the decades since *Saarinen* [v. *Kerr*, 84 N.Y.2d 494, 644 N.E.2d 988, 620 N.Y.S.2d 297 (1994)], the [New York] [l]egislature has not amended any of the relevant statutes in response to [the court's] holdings applying the [§] 1104 (e) reckless disregard standard to vicarious liability claims. The fact that the recklessness standard has for decades been understood by courts and the legal community to benefit municipalities is telling.").

Recent legislative activity further indicates that our reading of §§ 14-283 and 52-557n is consistent with the legislature's understanding of the relationship between those statutes. As we recently observed in *Daley*, the split among Superior Court decisions with respect to whether discretionary act immunity under § 52-557n (a) (2) (B) applies to emergency operation[18] and a broad reading of *Borelli's* holding resulted in the legislature's nearly unanimous passage of Senate Bill No. 204, 2022 Sess., as No. 22-22 of the 2022 Public Acts, "An Act Concerning Damages to Person or Property Caused by the Negligent Operation of a Motor Vehicle Owned by a Political Subdivision of the State," which would have amended General Statutes (Rev. to 2021) § 52-557n (a) (1) (B) but for Governor Ned Lamont's veto of the bill. See *Daley* v. *Kashmanian*, supra, 344 Conn. 493–94 n.22. Senate Bill No. 204 would have added the following language as the last sentence of § 52-557n (a) (2): "Notwithstanding the provisions of subparagraph (B) of this subdivision, governmental immunity shall not be a defense in a civil action for damages to person or property caused by the negligent operation of a motor vehicle owned by a political subdivision of the state." Public Acts 2022, No. 22-22, § 1.

In vetoing the bill, Governor Lamont explained that it "could entail, for example, that a police officer's *deci-*

*sion to pursue* a fleeing law violator is not a discretionary act and therefore governmental immunity does not apply. In that regard, I am concerned that the bill may inadvertently have gone too far." (Emphasis added.) Letter from Governor Ned Lamont to Denise W. Merrill, Secretary of the State (May 26, 2022) p. 2, available at https://portal.ct.gov/-/media/Office-of-the-Governor/Bill-notifications/2022/Bill-Notification-2022-13.pdf (last visited July 26, 2023); see *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 184–85, 162 A.3d 706 (2017) (relying on veto message accompanying gubernatorial veto of statutory amendment). Although the legislature did not attempt to override Governor Lamont's veto of the bill, a nearly identical bill unanimously was passed by the House of Representatives and the Senate and subsequently was signed into law by Governor Lamont in June, 2023. See P.A. 23-83, § 1; see also footnote 6 of this opinion. Thus, our conclusion that § 14-283 (d) precludes discretionary act immunity only for *the operation* of an emergency vehicle appears to be consistent with both Governor Lamont's concerns and the legislature's repeated attempts to ensure that governmental immunity does not apply in this context.

"Interpreting a statute to impair an existing interest or to change radically existing law is appropriate only if the language of the legislature plainly and unambiguously reflects such an intent." (Internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, supra, 257 Conn. 381. Accordingly, there is a strong presumption, applicable in this case, against construing § 52-557n to override the well established common-law and statutory liability for the negligent operation of an emergency vehicle without a clear and plainly expressed legislative directive to do so. See, e.g., *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 532–33, 839 A.2d 1250 (2004). Rather, the plain language of § 14-283 (d), the historical treatment of vehicular negligence claims under common-law precedent and our indemnification statutes, including claims of negligent operation of emergency vehicles, and our decision in *Tetro* v. *Stratford*, supra, 189 Conn. 601, lead us to conclude that the legislature did not intend for either §§ 14-283 or 52-557n to displace the well established duty of those operating emergency vehicles to drive with reasonable care. See *Daley* v. *Kashmanian*, supra, 344 Conn. 485 ("we presume that the legislature is aware of the common law on a particular subject and, further, that it knows how to abrogate common-law rules, as it deems appropriate").

Although we previously have observed that "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society"; (internal quotation marks omitted) *Haynes* v. *Middletown*, 314 Conn. 303, 317, 101 A.3d 249 (2014); we have also rejected the argument that "[p]ersonal and municipal liability for an officer's use of discretion

on patrol would hamper [officers'] ability to perform their duties as caretakers of the public," stating that, "[although] often necessary, police pursuits by definition are emergency situations, jeopardizing the safety and lives of those involved, as well as innocent bystanders." (Internal quotation marks omitted). *Cole* v. *New Haven*, supra, 337 Conn. 347. Thus, we have repeatedly rejected the proposition that all police conduct in emergencies is afforded discretionary act immunity.[19] See id.; see also *Daley* v. *Kashmanian*, supra, 344 Conn. 500–502.

Although there are considerable public policy considerations supporting the characterization of the statutory duty of care in the operation of an emergency vehicle as either ministerial or discretionary in nature,[20] it is well established that "the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *In re Tresin J.*, 334 Conn. 314, 340, 222 A.3d 83 (2019) (*Ecker, J.*, concurring); see, e.g., *Daley* v. *Kashmanian*, supra, 344 Conn. 502 (recognizing that it was inappropriate for this court to extend limited relief from compliance with traffic laws provided by emergency vehicle statute to nonemergency surveillance operations); *Durrant* v. *Board of Education*, supra, 284 Conn. 107 (since codification of common law under § 52-557n, court is not free to expand or alter scope of governmental immunity). Once the legislature has made its policy choice through statute, we are constrained to interpret the statutory language, not to decide on and implement our own policy choices.[21] Cf. C. Sherer, "Respondeat Superior Liability in Missouri for Injuries Sustained as a Result of Police Pursuits: § 537.600 and *Stanley* v. *City of Independence*," 68 UMKC L. Rev. 115, 135 (1999) ("[w]hen the emergency is such that the officer must choose between the lesser of two evils—the proverbial Scylla and Charybdis—it is this sort of executive [decision making] to which courts should defer" (footnote omitted)).

Accordingly, we conclude that the discretionary act immunity provided by § 52-557n (a) (2) (B) does not apply to the manner in which an emergency vehicle is operated by virtue of the codified, common-law duty to drive with "due regard" pursuant to § 14-283 (d). The trial court, therefore, should not have granted the defendants' motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Ecker and Alexander. Although Justice McDonald was not present at oral argument, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts

or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." As we discuss subsequently in this opinion; see footnote 6 of this opinion and accompanying text; § 52-557n was amended by No. 23-83, § 1, of the 2023 Public Acts. Hereinafter, unless otherwise indicated, all references to § 52-557n in this opinion are to the current revision of the statute.

[2] General Statutes § 14-283 provides in relevant part: "(a) As used in this section, 'emergency vehicle' means (1) any ambulance or vehicle operated by a member of an emergency medical service organization responding to an emergency call or taking a patient to a hospital, (2) any vehicle used by a fire department or by any officer of a fire department while on the way to a fire or while responding to an emergency call but not while returning from a fire or emergency call, [or] (3) any state or local police vehicle operated by a police officer or inspector of the Department of Motor Vehicles answering an emergency call or in the pursuit of fleeing law violators . . . .

"(b) (1) The operator of any emergency vehicle may (A) park or stand such vehicle, irrespective of the provisions of this chapter, (B) except as provided in subdivision (2) of this subsection, proceed past any red light, stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle, (C) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a, 14-219, or 14-307a as long as such operator does not endanger life or property by so doing, and (D) disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions.

"(2) The operator of any emergency vehicle shall immediately bring such vehicle to a stop not less than ten feet from the front when approaching and not less than ten feet from the rear when overtaking or following any registered school bus on any highway or private road or in any parking area or on any school property when such school bus is displaying flashing red signal lights and such operator may then proceed as long as he or she does not endanger life or property by so doing.

"(c) The exemptions granted in this section shall apply only when an emergency vehicle is making use of an audible warning signal device, including, but not limited to, a siren, whistle or bell which meets the requirements of subsection (f) of section 14-80, and visible flashing or revolving lights which meet the requirements of sections 14-96p and 14-96q, and to any state or local police vehicle properly and lawfully making use of an audible warning signal device only.

"(d) The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property.

"(e) Upon the immediate approach of an emergency vehicle making use of such an audible warning signal device and such visible flashing or revolving lights or of any state or local police vehicle properly and lawfully making use of an audible warning signal device only, the operator of every other vehicle in the immediate vicinity shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the emergency vehicle has passed, except when otherwise directed by a state or local police officer or a firefighter. . . ."

Although § 14-283 was the subject of technical amendments in 2021; see Public Acts 2021, No. 21-28, § 11; Public Acts 2021, No. 21-106, § 34; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

After transferring the appeal, we granted the parties permission to file supplemental briefs, and invited amici curiae to file briefs, addressing the applicability of this court's recent decision in *Daley* v. *Kashmanian*, supra, 344 Conn. 464. The following amici curiae accepted our invitation and filed briefs: (1) the Connecticut Defense Lawyers Association; (2) the Connecticut Trial Lawyers Association; and (3) the Connecticut Conference of Municipalities. We are grateful to the amici for their skilled professionalism and contributions in response to our invitation.

[4] "First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006).

[5] Given this conclusion, we need not reach the plaintiffs' arguments that we should reverse the trial court's decision to grant summary judgment because (1) the trial court did not give them a fair opportunity to make a

meaningful factual showing that governmental immunity did not apply in light of these facts, and (2) they fall within the identifiable person subject to imminent harm exception to discretionary act immunity.

[6] P.A. 23-83, § 1, added the following language to § 52-557n (a) (1): "Notwithstanding the provisions of subparagraph (B) of this subdivision, governmental immunity shall not be a defense in a civil action for damages to person or property caused by the negligent operation of a motor vehicle owned by a political subdivision of the state. The elimination of the defense of governmental immunity as provided for in this subsection shall not be construed as limiting or expanding the rights, duties and exemptions granted to the operator of an emergency vehicle under section 14-283."

[7] Section 1-2z directs "us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *King*, 346 Conn. 238, 247, 288 A.3d 995 (2023).

[8] General Statutes § 52-557n (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties *shall not be liable* for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure . . . (3) the temporary condition of a road or bridge . . . (4) the condition of an unpaved road, trail or footpath . . . (5) the initiation of a judicial or administrative proceeding . . . (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization . . . (8) failure to make an inspection or making an inadequate or negligent inspection of [certain] property . . . (9) failure to detect or prevent pollution of the environment . . . or (10) conditions on land sold or transferred to the political subdivision by the state . . . ." (Emphasis added.).

[9] In *Grady*, we recognized that this court previously concluded in *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 191–92, 592 A.2d 912 (1991), and *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003), that the phrase, " '[e]xcept as otherwise provided by law,' " as used in the savings clauses of § 52-557n (a), applies to state and federal statutes, but not to the common law, because it would have rendered the applicable "statutory language a meaningless nullity . . . ." *Grady* v. *Somers*, supra, 294 Conn. 341–43.

[10] See, e.g., General Statutes § 52-556 ("[a]ny person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage *shall have a right of action against the state* to recover damages for such injury" (emphasis added)); see also General Statutes § 13a-149 ("[a]ny person injured in person or property by means of a defective road or bridge *may recover damages from the party bound to keep it in repair*" (emphasis added)).

[11] The plaintiff in *Voltz* fell from a fire truck as the defendant assistant fire chief began to drive the truck out of the firehouse. See *Voltz* v. *Orange Volunteer Fire Assn., Inc.*, supra, 118 Conn. 308–309. Relying on the applicable governmental immunity law at the time, the court acknowledged that "[t]he driver of a fire truck is liable to one injured by his negligent driving, [although] the municipality employing him is exempt from liability." Id., 310. Similarly, in *Tefft*, this court concluded that the trial court had correctly instructed the jury that a volunteer firefighter "was required to use the care of a reasonably prudent man under the circumstances," noting that a "driver of fire apparatus, proceeding to a fire, is bound to exercise the care and control for his own safety and that of others which is reasonable under the circumstances." *Tefft* v. *New York, New Haven & Hartford Railroad Co.*, supra, 116 Conn. 134.

[12] General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence,

accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . .”

[13] We note that the legislative history of § 14-283 is silent with respect to that statute’s relationship to the various governmental immunity doctrines.

[14] By contrast, the legislative history of § 52-557n contains significant discussion on the extent that the act would change the existing common law to afford immunity, for example, to municipalities from claims of negligent supervision by their schoolteachers. See, e.g., 29 H.R. Proc., supra, pp. 5897–98, remarks by Representative John J. Woodcock III (Representative Woodcock urged a vote on an amendment to further study the bill and detailed how the bill “deviates from a long held standard of care that the supervisors of children have had [in Connecticut] . . . . It is a very serious, serious erosion of a standard of care that we have had in this state from day one.”).

[15] Although this court stated in *Borelli* that the phrase “due regard” in § 14-283 (d) “imposes a general duty on officers to exercise their judgment and discretion in a reasonable manner” prior to initiating a pursuit; *Borelli* v. *Renaldi*, supra, 336 Conn. 14; we emphasize that the scope of *Borelli* is limited to the officer’s *decision to act*, namely, to initiate a pursuit. See id., 3–4, 10. We expressly emphasized that *Borelli* did “not concern the much broader question of whether and under what circumstances the duty to drive with due regard for the safety of others is discretionary or ministerial.” Id., 9 n.5.

[16] See, e.g., *Blackwood* v. *Hanceville*, 936 So. 2d 495, 506–507 (Ala. 2006) (legislature removed protection of emergency vehicle statutory privilege if officer drives with reckless disregard for safety of others); *Morris* v. *Leaf*, 534 N.W.2d 388, 390 (Iowa 1995) (plain language of statute provided that police officer should not be civilly liable unless officer acts with reckless disregard for safety of others); *Robbins* v. *Wichita*, 285 Kan. 455, 469, 172 P.3d 1187 (2007) (statutory language established reckless disregard as standard of care); *Saarinen* v. *Kerr*, 84 N.Y.2d 494, 501, 644 N.E.2d 988, 620 N.Y.S.2d 297 (1994) (officer’s conduct may not form basis of civil liability unless officer acts in reckless disregard for safety of others); *Burgin* v. *Leach*, 320 P.3d 33, 38 (Okla. Civ. App. 2014) (operator of emergency vehicle is liable only for conduct that is in reckless disregard of safety of others); *Roberts* v. *Kettelle*, 116 R.I. 283, 291, 356 A.2d 207 (1976) (statute denies protection to drivers who execute duties with reckless disregard); *Amarillo* v. *Martin*, 971 S.W.2d 426, 432 (Tex. 1998) (plaintiff must assert and establish that emergency vehicle operator was reckless as matter of law); *Rochon* v. *State*, 177 Vt. 144, 149–50, 862 A.2d 801 (2004) (higher standard of recklessness furthers legislative purpose).

[17] Section 1104 (e) of the N.Y. Vehicle & Traffic Law (McKinney 2011) provides: “The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.”

In *Saarinen* v. *Kerr*, 84 N.Y.2d 494, 644 N.E.2d 988, 620 N.Y.S.2d 297 (1994), which is recognized as New York’s “seminal case on § 1104;” *Mfon* v. *Dutchess County*, Docket No. 14-CV-6922 (KMK), 2017 WL 946303, *6 (S.D.N.Y. March 9, 2017), aff’d, 722 Fed. Appx. 46 (2d Cir. 2018); the New York Court of Appeals reasoned that “[t]he fact that the [l]egislature went beyond [a negligence] formulation and invoked the ‘reckless disregard’ terminology demonstrates beyond question that something more exacting than that traditional [negligence] inquiry was intended.” *Saarinen* v. *Kerr*, supra, 501.

[18] Judge Povodator’s decision in *Torres* v. *Norwalk*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-16-6029691-S (May 2, 2018) (66 Conn. L. Rptr. 548, 556–59), aptly collects and describes the discretionary versus ministerial lines of Superior Court decisions. See *Daley* v. *Kashmanian*, supra, 344 Conn. 494 n.22. In *Torres*, Judge Povodator concluded that, rather than imposing a duty that is discretionary or ministerial, § 14-283 itself did not afford immunity in connection with the negligent operation of an emergency vehicle. *Torres* v. *Norwalk*, supra, 559. But see *Albarran* v. *Blessing*, Docket No. 3:17-CV-2157 (SRU), 2020 WL 1169401, *8 (D. Conn. March 11, 2020) (applying Connecticut law and noting that “the duty to drive with ‘due regard’ for the safety of all persons and property . . . necessarily requires the exercise of judgment, which is the ‘hallmark’ of a discretionary duty” (citation omitted)).

[19] We recognize that an overarching criticism of a limited governmental immunity in this context is that the potential for liability may hamper emergency response procedures for police, fire, and emergency services. See footnote 20 of this opinion and accompanying text. In particular, the Connecticut Conference of Municipalities and the Connecticut Defense Lawyers Association have expressed concerns in their amicus briefs that police officers will be hindered in timely responding to emergencies while complying with applicable motor vehicle laws, with the Connecticut Defense Lawyers Association noting that “research shows that even a few minutes can

matter greatly when responding to police, fire, and medical emergencies." However, "[t]his state has a strong public policy in favor of encouraging the safe operation of motor vehicles and discouraging police officers from initiating [high-speed] chases for minor vehicular infractions." *Borelli* v. *Renaldi*, supra, 336 Conn. 167 (*Ecker, J.*, dissenting); see General Statutes § 14-283 (b) (1) (C) ("[t]he operator of any emergency vehicle may . . . exceed the posted speed limits or other speed limits . . . *as long as such operator does not endanger life or property by so doing*" (emphasis added)). The legislature, by virtue of General Statutes § 52-556**,** has waived sovereign immunity for actions against state police officers for the negligent operation of their emergency vehicles; see *Babes* v. *Bennett*, 247 Conn. 256, 260, 721 A.2d 511 (1998); and there is no evidence proffered that our state police officers respond to emergencies any less efficiently or swiftly as a result. Further, General Statutes § 7-465 (a) requires that municipalities indemnify their employees for liability for physical damages to persons or property, and General Statutes §§ 7-308 (b) and § 7-101a (a) require that municipalities hold harmless any volunteer firefighter, ambulance member, or police officer, as well as municipal officer, respectively, for liabilities arising out of negligence claims. See *Borelli* v. *Renaldi*, supra, 86 n.21 (*Ecker, J.*, dissenting) (citing various municipal employee indemnification statutes).

[20] On the one hand, in its amicus brief supporting the plaintiffs, the Connecticut Trial Lawyers Association argues that granting, in essence, blanket immunity to emergency operation violates legislative command and judicial precedent, and would serve to threaten the lives and safety of the public. See 4 Restatement (Second), Torts § 895C, comment (d), p. 408 (1979) (noting that governmental immunity recently has been criticized on ground "that it is better that the losses due to the tortious conduct of officers and employees should fall [on] the municipality rather than [on] the injured person and that torts of public employees are properly to be regarded, as in other cases of vicarious liability, as a cost of the administration of government and should be borne by the public"); see also *Torres* v. *Norwalk*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-16-6029691-S (May 2, 2018) (66 Conn. L. Rptr. 548, 557) ("[T]he risk of panicky conduct by the pursued operator creates risks not only to the pursued operator (and [the] occupants of his/her vehicle), but also to innocent third parties who may be the victims of the [out of control] conduct of pursued operators, and the consequences of the conduct of the pursued driver appears to be of greater concern. [*Tetro*] was a prime example of that problem.").

On the other hand, in its amicus brief supporting the defendants, the Connecticut Conference of Municipalities argues that characterizing the duty of care in the operation of an emergency vehicle as ministerial in nature would be poor public policy because it would substantially restrict the ability of Connecticut's cities and towns to provide emergency fire, medical, and police services. The Connecticut Defense Lawyers Association similarly argues in its amicus brief that considering the act of operating an emergency vehicle to be ministerial in nature would prevent operators from making difficult assessments as they drive and that "society benefits from having government officials exercise judgment unhampered by fear of second-guessing and retaliatory judgments . . . ." (Internal quotation marks omitted.)

[21] In reaching this conclusion today, we also emphasize that retaining a negligence standard for emergency vehicle operation is consistent with the law in several sister states. See, e.g., *Little Rock* v. *Weber*, 298 Ark. 382, 388, 767 S.W.2d 529 (1989) ("the city should be held to a standard of ordinary care"); *Torres* v. *Los Angeles*, 58 Cal. 2d 35, 47, 372 P.2d 906, 22 Cal. Rptr. 866 (1962) (statute did not exempt from liability negligence attributable to failure by driver of emergency vehicle to maintain common-law standard of care); *Pogoso* v. *Sarae*, 138 Haw. 518, 525–26, 382 P.3d 330 (App. 2016) (emergency vehicle statute imposes negligence standard of care), cert. dismissed, Docket No. SCWC-12-0000402, 2017 WL 679187 (Haw. February 21, 2017); *Gonzalez* v. *Johnson*, 581 S.W.3d 529, 535 (Ky. 2019) (officer can be cause of damages inflicted on third party as result of negligent pursuit); *Lenard* v. *Dilley*, supra, 805 So. 2d 181 (legislature's intent was to set forth both ordinary negligence and reckless disregard standards of care depending on circumstances); *Baltimore* v. *Fire Ins. Salvage Corps of Baltimore*, 219 Md. 75, 82, 148 A.2d 444 (1959) (under emergency vehicle statute, operator's failure to exercise reasonable care under circumstances rendered him liable for ordinary negligence); *Stenberg* v. *Neel*, 188 Mont. 333, 338, 613 P.2d 1007 (1980) ("[t]he driver of an emergency vehicle is charged with a duty of due care" and "must use ordinary care under the circumstances"); *LaVista* v. *Andersen*, 240 Neb. 3, 8, 480 N.W.2d 185 (1992) (in negligence actions, actions of "the driver of an emergency vehicle . . . are measured against those of a reasonable person exercising due care under the same emergency circumstances"); *Lowrimore* v. *Dimmitt*, 310 Or. 291, 297, 797 P.2d 1027 (1990) (court could not "say, as a matter of law, that there [was] no evidence of negligence on the part of the pursuing officer," which was "[an issue]

best left to [the] jury"); *Jones* v. *Chieffo*, 549 Pa. 46, 52, 700 A.2d 417 (1997) ("governmental party is not immune from liability when its negligence, along with a third party's negligence, causes harm"); *Haynes* v. *Hamilton County*, 883 S.W.2d 606, 609 (Tenn. 1994) (emergency vehicle drivers participating in high-speed chases are required to exercise due regard for safety of all persons, including third parties); *Day* v. *State ex rel. Utah Dept. of Public Safety*, 980 P.2d 1171, 1181 (Utah 1999) (emergency vehicle statute imposes duty of reasonable care under circumstances to third parties on police officer engaged in pursuit); *Mason* v. *Bitton*, 85 Wn. 2d 321, 325, 327, 534 P.2d 1360 (1975) (genuine issues of fact existed regarding whether statutory duty of due regard was breached); *Legue* v. *Racine*, 357 Wis. 2d 250, 298, 849 N.W.2d 837 (2014) (duty of due regard imposed ministerial duty, precluding defense of governmental immunity); see also P. O'Connor & W. Norse, "Police Pursuits: A Comprehensive Look at the Broad Spectrum of Police Pursuit Liability and Law," 57 Mercer L. Rev. 511, 517 (2006) (noting "[a] dramatic shift" in reluctance of courts to displace responsibility from officers who violate standard police conduct during course of pursuit).

Because we limit our conclusion in this appeal to the *duty to drive with due regard for the safety of persons and property*, we emphasize that, in the absence of legislative action, discretionary act immunity for *the decision to pursue* a fleeing law violator remains intact under *Borelli* v. *Renaldi*, supra, 336 Conn. 10. See *Caddo Valley* v. *George*, 340 Ark. 203, 210, 9 S.W.3d 481 (2000) (once officers exercised discretion and made decision to pursue stolen vehicle, any subsequent actions were required by law to be taken with ordinary care). We also emphasize that emergency operators remain entitled to the presumption against negligence per se inherent in § 14-283 (b) for the violation of certain motor vehicle statutes when responding to an emergency. See General Statutes § 14-283 (b). However, our legislature evidenced, in the 1971 amendment to § 14-283, the general public's significant interest in not being subject to *unreasonable* risks of injury as emergency operators carry out their duties. See *Haynes* v. *Hamilton County*, supra, 883 S.W.2d 611; see also *Borelli* v. *Renaldi*, supra, 130–31 (*Ecker, J.*, dissenting) ("[§] 14-283 (d) reflects an explicit and unequivocal statement by the legislature that considerations of public safety on our roads must always remain superior and paramount").